### Cornett, et al. v. Kentucky River Coal Company.

(Decided May 22, 1917.)

### Appeal from Perry Circuit Court.

1. **Contracts—Fraud and Misrepresentation—Cancellation.** — The fraud that will authorize the cancellation of a written contract must be clear and convincing, and all of the evidence of the parties in connection with the execution of the contract and its construction by the parties prior to the institution of the suit will be considered upon the question of the alleged fraud in its execution.

2. **Specific Performance—Discretion of Chancellor.**—The right to specific performance of a contract is not absolute but rests in the sound judicial discretion of the chancellor controlled by established principles of equity and exercised upon the consideration of all the circumstances of each particular case.

3. **Specific Performance—Fraud—Evidence.**—Evidence examined and held to be insufficient to establish that there was fraud in the execution of the contract alleged by plaintiff; and that an order of specific performance was not an abuse of a sound judicial discretion upon the evidence of this case.

4.  Appeal and Error—Judgment for Specific Performance—Clerical Misprision.—The fact that a judgment of specific performance ordered the contract performed according to its terms and did not specify that walnut trees excepted by the contract should be excepted in the deed of conveyance of the land is at most but a clerical misprision which this court will not correct until refused upon proper motion by the lower court.

5.  Boundaries—Location of Lost Lines—Rules as to.—Rules recognized in aid of the proper location of lost lines of a patent must give way to evidence showing their inapplicability to the particular case.

6.  Boundaries—Courses and Distances—Rules as to.—While it is a rule approved in this court that the distances called for will be sacrificed in preference to this course if by so doing the survey made be made to close within reasonable bounds, the rule is subject to many exceptions and is not applicable where a more reasonable method for closing is shown by the facts of the particular case.

7.  Boundaries—Courses and Distances—Evidence.—Under the evidence here showing an error in an established line, the survey is closed by changing the course of the opposite line which maintains the distance approximately of the opposite line, and the courses and distances of other lost lines and approximates the acreage called for in the patent, any other method unreasonably extending distances of lost lines and also increasing the acreage excessively.

HOGG & JOHNSON for appellants.

WOOTTON & MORGAN, H. C. FAULKNER and W. O. DAVIS for appellee.

Opinion of the Court by Judge Clarke—Affirming.

On March 27, 1905, appellants, W. W. Cornett and M. J. Cornett, his wife, executed and delivered to appellee, Kentucky River Coal Company, a contract for the sale of a tract of land on Clover Fork of Big Leatherwood Creek of the north fork of the Kentucky River, in Perry county, and containing "about 560 acres from estimation." This contract was recorded in the office of the clerk of the Perry county court on July 18, 1905. The contract contained a provision that appellee was to pay appellants for the land $6.50 per acre, $25.00 of which was paid when the contract was executed, and the balance was to be paid within twelve months from that date, "when the amount thereof is ascertained as hereinafter stated." The stipulation as to how and when the balance of the contract price was to be paid is as follows:

"Before payment of said deferred consideration can be demanded by the grantor as a matter of strict right,

the number of acres in said boundary is to be determined by actual survey made by and under the direction of a competent civil engineer at the expense of grantee, and grantor shall furnish a complete abstract showing title in him and thereupon convey to grantee by deed containing covenants of general warranty, etc."

Seeking to enforce a specific performance of this contract, appellee filed this action against appellants on the 18th day of October, 1910, alleging in the petition, after setting up the contract, that it had caused to be made by a competent surveyor a survey of the land described in the contract and ascertained thereby the actual number of acres to be ——— acres; that appellant, W. W. Cornett, accompanied the surveyor over and around the marked boundary lines, but, for the purpose of avoiding the contract, objected to the number of acres ascertained, and claimed that the survey was incorrect; that appellee then sent other surveyors upon the land and had it resurveyed, obtaining the same results as before, and that appellants still refused and failed to convey the land to appellee, and have, at all times, refused to furnish appellee with the evidences of their title, or an abstract thereof, and had evaded plaintiff and its employes and recently absolutely refused and failed to convey to it said land, and plaintiff had been, at all times since the execution of the contract, ready, willing and able to pay for the land according to the contract.

To that the defendants made answer, traversing the allegations of the petition; in the second paragraph, pleaded that the contract was obtained by misrepresentation and fraud; that the contract actually made an option for twelve months and not a contract of sale; and, in a third paragraph, alleged that the contract should not be enforced because it was a chancing bargain, unconscionable and inequitable, because the plaintiff has a superior knowledge of the present and probable future values of the land, and with this superior knowledge, failed and refused, for a period of more than five years from the date of the writing, to do any act tending toward a performance of the stipulations thereof. That appellee was at all times insolvent and did not execute the contract with any intention of taking the land except in the event that its salable value should materially increase.

Appellee, by reply, traversed the affirmative allegations of the answer, and, in a separate paragraph, pleaded that appellants were estopped from asserting fraud in

the execution of the contract by failure to complain thereof until after the suit for its enforcement was filed, and by causing appellee to expend large sums in resurveying the land after the expiration of twelve months, with full knowledge of the provisions of the contract, in the belief that they would comply with its terms when satisfied that a correct survey had been made.

Appellants filed a rejoinder traversing the affirmative allegations of the reply, thus completing the issues.

We deem it necessary to the decision of the case to consider the following propositions: First, whether or not the contract was vitiated by fraud on the part of appellee in its execution; second, whether or not a specific performance was warranted upon the facts proven; and, third, whether or not the judgment rendered is correct in the terms upon which the contract was ordered performed.

1. It is admitted by counsel for appellants that the contract is, in form, a contract for the absolute sale of the land described and not an option, but it is insisted that as a result of fraud practiced by the agent of appellee, who acted for it in the execution of the contract, the writing signed is not their true contract in that it is an absolute contract for the sale rather than an option; that before the writing was signed, the agent for appellee, who had prepared it, professed to read it to appellants, but did not read it correctly; that provisions agreed upon making it void upon the failure of appellee to exercise its option to buy within a year were fraudulently omitted from the writing, but that the writing, before it was signed by appellants, was read to them by the agent of appellee as though it included these provisions. In support of this contention appellants introduced the appellant, W. W. Cornett, P. C. Hall, and W. R. Halcomb, each of whom testified that the contract, as verbally made by the parties, and as read by appellee's agent, contained a provision of forfeiture that would have made it an option rather than a contract of sale. The agent of appellee, denied this testimony of appellant's witnesses and alleged that the contract, as signed, truthfully recorded the contract as made and as read by him to appellants before its execution. These are the only witnesses who were present at the execution of the contract, and upon this evidence counsel for appellants earnestly insist that the fraud alleged is established, since three witnesses testify to the fraud which is denied by only one witness.

While this is all of the evidence bearing directly upon the execution of the contract, except the contract itself, and which alone possibly might have authorized the chancellor in avoiding the contract, there are other circumstances in the evidence which amply sustain the judgment of the chancellor in upholding the contract. Appellant, W. W. Cornett, was shown to be, at the time the contract was executed, fifty-eight years of age, a successful merchant and farmer, able to read and write and to understand the contract as executed. The parties were dealing at arm's length and while appellant testifies that he did not read the contract, he does not offer any reason for not doing so. The contract was put to record on July 18, 1905, and from that date, at least, he cannot deny knowledge of just what it did contain. He testified that he remembered the date of its execution and yet more than a year thereafter he went upon the land and showed to the surveyors, employed by appellee to survey it, the location of his corners, and held frequent conversations with agents of appellee looking to a compliance with the terms of the contract when the dispute as to the true acreage was determined by a survey satisfactory to him.

At no time until he filed his answer did he even intimate to appellee or any of its agents, in any of these frequent conversations, that there was any reason why he would not comply with his contract except that he was dissatisfied with the surveys made. He states that he assisted Mr. Ward, the first surveyor sent by appellee to survey the land, in locating the corners; that he knew the twelve months had elapsed at that time and that he was then willing to convey the land; that the only reason he gave for not then conveying it was he thought there was a larger acreage than shown by the survey. While he was having appellee, at great expense, make these several surveys upon the representation that he was not satisfied with the number of acres found by the surveyor, his true reason for not making the conveyance is no doubt disclosed in the following question and answer:

"Q. If I understand you, the thing that stood in the way of agreement between you and Mr. Harvey and his company was the matter of acreage of the land; is that correct? A. Well, that is one reason, and some other reasons; the lands had advanced in value, and I had been offered more for the land than they was proposing to pay."

The price agreed upon in the contract was as much, if not more, than other similar lands in the vicinity were selling for at the time the contract was made. Whether considered as bearing upon any alleged fraud in the execution of the contract or as an estoppel preventing him from relying upon any such fraud, we think the actions of appellant in dealing with appellee after the expiration of the twelve months he claimed as the optional period is conclusive of any right upon his part to have the contract set aside upon the ground that it was fraudulently obtained. It is a well-settled rule that before a written contract can be set aside upon the ground of fraud in its execution the proof of fraud must be clear and convincing, and considering all of the evidence we do not think it arises to that dignity. Upton v. Tribilcock, 91 U. S. 45; Crawford & Catlin, &c., v. M. Livingston & Co., 153 Ky. 62; Chicago Building & Manufacturing Co. v. Beaven, 149 Ky. 273.

In order to be able to avail himself of fraud in the execution of the contract, the party attempting its avoidance must proceed within a reasonable time and must not have ratified the contract after he has discovered, or could have discovered by the exercise of diligence, the existence of the fraud. Appellant is presumed to have known the contents of the writing at least after its recordation in July, 1905. He never did repudiate it until after he was sued to enforce it, but, upon the other hand, after the expiration of the contract he claims to have made, he was encouraging appellee to make, and was assisting it in making, several surveys at an expense to it of probably $250.00 or $300.00, as shown by the evidence, in the belief that he understood and was going to comply with his obligations as expressed in the contract as executed. His actions were clearly such a ratification of the contract as to estop him from relying upon any infirmity in the execution of it. Golden v. Cornett, et al., 154 Ky. 438; Tennis Coal Co. v. Asher and Hensley, 143 Ky. 223; Fletcher, &c., v. Wireman, 152 Ky. 565; Pomeroy on Equity Jurisprudence, vol. 2, sections 916, 964, and 965; Culton v. Asher, et al., 149 Ky. 659; Bispham on Equity, section 260.

2. Counsel for appellants insist that even though it should be held that the contract was not vitiated by fraud in its execution, a specific performance of it ought not to be ordered because the contract was oppressive and unconscionable and not entered into by appellee with

the intention of carrying it out unless the land contracted for should thereafter advance in price; but we are not impressed that there is any merit in this contention. It is true, of course, that the right of specific performance is not absolute, but rests in the sound judicial discretion of the chancellor. It is a right enforced only in equity and upon equitable principles, and it is conceivable that a contract, even though not entirely void because of fraud, for equitable reasons, ought not to be enforced. In the case of Federal Oil Co. v. Western Oil Co., 121 Fed. 674, 57 Circuit Court of Appeals 428, the court states the rule as follows:

"The principles by which courts of equity are guided in respect to such, are well established. The right to specific performance is not absolute, but rests in judicial discretion, a sound judicial discretion—not an arbitrary discretion, but sound, judicial discretion, controlled by established principles of equity, and exercised upon the consideration of all the circumstances of each particular case."

We apprehend that there can be no objection to the above statement of the rule. The case at bar shows that the parties were dealing at arm's length; that the price to be paid for the land was as high, if not higher, than that being paid for similar land in that vicinity at that time. Appellant is shown to have been thoroughly competent to take care of himself in such a transaction; that the delay in performance by appellee was the result, upon its part, of attempting to satisfy appellants as to the correctness of its survey. Appellant, never, at any time, attempted to have a survey made for himself, nor did he ever tender a conveyance or seek, in any way, an enforcement of the contract. It is shown in the evidence that under similar contracts appellee, through its assignees, took up and paid for many thousands of acres of land in the same neighborhood, and that it never defaulted upon any of its contracts. We are, therefore, convinced that under all the circumstances of this particular case, the chancellor did not abuse a sound judicial discretion in ordering a specific performance of the contract.

3. The first objection to the manner of performance ordered is that, by the contract, the walnut trees upon the land were excepted from the contract and that the judgment did not give effect to this exception, but ordered a conveyance of the land without reference thereto. This question was not an issue and did not arise in the lower

court, and was not, of course, considered by the chancellor, who, in the decree, did not set out the contract in full, but simply directed that appellants should, before a certain time, convey the land, describing it, to appellee according to the terms of the contract. The question could have been raised by appellants by tendering the deed in which the walnut timber was reserved, or, declining or failing to make such a tender, by an exception to the deed prepared by the master if it did not exempt such timber. Or, if appellant was dissatisfied with the decree because of not mentioning the exception of the walnut trees and conceived it to be an error, he could, at any time, have had it corrected by the court on motion, as other clerical errors are required to be corrected, for such, only, it was.

The other objection urged to the manner of the performance is that the court erred in adjudging the boundary to be conveyed. Appellant contends that the proper location of the land covered by the 500-acre patent issued to Robert Cornett April 21, 1849, under which he holds title, includes 918 acres, while under the construction contended for by appellee and adopted by the court, it is held to include only 590 acres, of which, however, under either construction, 247 acres in Leslie county, is to be excluded as not covered by the contract, leaving to be conveyed, under the contract, if appellant's construction of the patent is correct, 671 acres, but only 343 acres under the construction advanced by appellee and adopted by the court. This difference in the location of the boundary results from the fact that the last six calls in the patent do not call for any established object, and that if run by the courses and distances, the patent will not close. There are thirteen lines called for in the patent, the first seven of which are located by marked trees and about the location of which there is no dispute affecting this controversy. However, in running the call between the sixth and seventh corners in the patent, it was found necessary to extend the line approximately eighty poles beyond the distance called for in order to reach the timber which it is agreed marks the seventh corner, and that this error in the recorded distance of this line is responsible for the failure of the patent to close, is the contention of appellant, who also claims that the effect of this error is compensated for and adjusted by extending the distances called for on the courses given in the last two lines of the boundary until they will intersect. This theory is

approved by W. A. Ward, a practical surveyor of twelve years' experience, who first surveyed the land for appellee and was introduced by it as its witness. The theory contended for by appellee and adopted by the court for closing the patent is advanced and supported by the testimony of R. L. Blakeman, a thoroughly qualified surveyor, who made the last survey of the land in question for appellee and was also introduced by it as a witness. His theory is to reverse the last call from the beginning corner and run the course and distance called for in the patent, and the result he accepts as the proper location of the thirteenth corner. He then begins at the eighth corner, which is the last marked corner, and runs the courses and distances of the eighth, ninth, tenth and eleventh lines, the result of which he accepts as establishing the twelfth corner. He then connects the twelfth and thirteenth corners by a straight line, which varies from the course of that line called for in the patent by seven and one-half degrees, but which approximates the distances called for for that line, being lengthened almost exactly the same distance as the error in the sixth line. In other words, Blakeman's theory sacrifices the course called for in one line and attributes to that particular line whatever error that may have been responsible for the failure of the patent to close. Appellants' theory makes the patent, which called for five hundred acres, include nine hundred and eighteen acres, and sacrifices the distances called for in the twelfth and thirteenth lines, but retains their courses and extends them until they intersect, a distance out of all proportion to the error in the sixth line. He extends the twelfth line from 806 poles called for to 1058 poles, and the thirteenth line from ninety poles, called for, to three hundred and twenty poles.

It has long been the rule in attempting to locate lost lines to give preference to the courses rather than to the distances, and to close the survey, if possible, by lengthening or shortening the distances rather than changing the courses, but in so doing the error in distances must be reasonable and should be apportioned to all of the lost lines rather than arbitrarily placing it in only some of them. This rule of sacrificing distances to courses is only a general rule and is subject to many exceptions, where, from the evidence of a particular case, some other more satisfactory method of adjusting the error is disclosed. This rule was first announced in Beckley v.

Bryan, Sneed. 93, and has been followed and recognized in many cases, but its limitations have been called to attention and it has been departed from about as frequently as it has been followed. A frequent reason given for departing from this general rule is where, by following it, a figure is produced that does not correspond with the original survey and plat upon which the patent is issued, and which always may be looked to in determining the proper mode to be adopted in closing the survey. Steele v. Taylor, 3 A. K. Mar. 226; Bruce v. Taylor, 2 J. J. Mar. 160; Harris v. Lavin, 6 Ky. Law Rep. 304; Hagins v. Whitaker, 42 S. W. 751; Goff v. Lowe, 80 S. W. 219. Neither party in this case offered to introduce in evidence the original patent or survey and plat, although they might have been exceedingly helpful in a correct solution of the problem. Both Mr. Blakeman and Mr. Ward testified that their respective theories for closing the patent were in accord with an unauthenticated copy of the original survey and plat with which they compared their surveys, but neither was able to say whether or not the copy was correct. This evidence was, therefore, of no value. Another reason for departing from the above general rule is where a known error in established lines may be offset by a corresponding change in the lost line opposite, when the course or distance called for in the lost line opposite the known error, or both, may be changed to close the survey. This exception to the general rule was announced and applied in the case of Preston Heirs v. Bowman, 2 Bibb 493, decided soon after the Beckley v. Bryan opinion was delivered, and has frequently been used since in closing surveys. In that case, the survey was closed by changing the course rather than the distance called for, and we think the facts here are sufficiently analogous to call for the application of the same method for closing the survey. The proven error here is in the sixth line, which forms a part of the irregular northern boundary line of the survey, and the twelfth line is the lost line opposite forming the southern boundary of the patent. To change this twelfth line by the same distance as the error in the sixth line, and by seven and one-half degrees, closes the survey so as to include approximately the number of acres called for in the patent, and while the number of acres is not controlling evidence it has evidential value, as has the fact that the known error is in the opposite line, both of which support appellee's theory, while appellants' theory is supported by no evi-

dence whatever, but depends entirely upon the application of a rule of construction manifestly not applicable here because it requires an extension of the opposite line out of all proportion to the known error in the sixth line, and extends the thirteenth line, only 90 poles in length as called for, to nearly four times its prescribed length without any known error in its opposite line. Appellants argue there was a proven error in the length of the second line of 201 poles, which added to the error in the sixth line of 80 poles, makes the total error in the length of the northern boundary lines approximately the same as the extension they propose in the twelfth line, but there is no competent, if any, evidence of any such error in the second line. The original patent is not in evidence and this line, as described in the contract between the parties, is 225 poles, and as run is 223 poles in length. So there is no error proven in its length and we do not know upon what authority the statement of error in this line is predicated.

There is no hard and fast rule for closing a survey, but such rules as are employed are but rules of construction in aid of an effort to relocate lost lines as they were located in the original survey, which is always the problem for solution, and rules of construction must give way to competent evidence disproving their applicability to a given case.

Two rules of construction often recognized and applicable here are that reversing calls is as lawful and pursuasive as following their order—Pearson v. Baker, 4 Dana 323—and that when a party is claiming under a survey where the course or distance must yield without data to determine whether the mistake was in the one or the other, the mode of closing the survey must be adopted which operates most unfavorably to the party claiming under it. Preston Heirs v. Bowman, *supra,* and Pearson v. Baker, *supra.*

Finding neither substantial nor prejudicial error in the judgment appealed from it is affirmed.