## Johns v. Masterson.

### (Decided June 15, 1917.)

### Appeal from Jefferson Circuit Court (Chancery Division No. 1).

1. Contracts—Fraud—Evidence.—To obtain relief on account of fraud or misrepresentation alleged to have been used to induce a trade, the complainant may not wait an unreasonable length of time before instituting an action, nor will relief be granted where the fraud has been ratified or condoned by the acquiescence and acceptance of the benefits of the trade by complainant.

2. Contracts—Fraud—Evidence.—It never becomes the duty of a chancellor to make a new bargain for the contracting parties. The only duty being to construe and enforce contracts, unless it appear from the evidence that advantage has been taken by reason of a confidential or fiduciary relation existing between the parties, or by fraud, or misrepresentation in cases where the parties deal at arms' length and are sui juris.

A. B. BENSINGER for appellant.

WALLACE DOWNING for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

In 1910, Syle Rathchild and Flora G. Rathchild, husband and wife, executed and delivered to Eng Schmitt their promissory note, whereby they agreed and promised to pay Schmitt, two years thereafter, the sum of fifteen hundred dollars, with six per cent. interest until paid. Simultaneously with the execution of the note the Rathchilds executed and delivered to Schmitt a mortgage on a certain house and lot on Lampton street, in the city of Louisville, to secure the payment of the fifteen hundred dollars. Thereafter the Rathchilds conveyed the house and lot to appellant, Rector Johns, he to assume the payment of the fifteen hundred dollar mortgage debt. In October, 1913, appellee, Mary Masterson, a resident of

New Hope, Kentucky, and the owner of a small general store in that town, entered into a trade with Rector Johns whereby she, at the price of five thousand dollars, became the purchaser of the house and lot on Lampton street, in the city of Louisville, upon which the mortgage for fifteen hundred dollars was held by Schmitt. In the trade Mrs. Masterson turned over to Johns her stock of general merchandise for the lump sum of twenty-six hundred dollars, assumed the mortgage debt of fifteen hundred dollars, and executed to Johns her nine (9) several notes, of one hundred dollars each, due at intervals through the next two years, and these made up the total purchase price of five thousand dollars, which she was to pay for the house and lot. She took possession of the property, and let it to tenants and collected the rent. Johns took charge of the store and disposed of it. Shortly thereafter she again entered into the mercantile business in New Hope, Kentucky, and continued to reside in that town.

On September 9, 1914, Schmitt, who had been unable to collect the money due on his note and mortgage, instituted this action in the Jefferson circuit court against Mary Masterson, Flora G. Rathchild, Syle Rathchild and Rector Johns, alleging that the note for fifteen hundred dollars was long past due and unpaid, and that the same was secured by mortgage upon the house and lot on Lampton street, then owned by Mrs. Masterson, and prayed a foreclosure and enforcement of his mortgage lien. Thereupon Mrs. Masterson filed her answer and cross-petition in which she alleged that "Rector Johns came to her residence and store in New Hope, Kentucky, and offered to sell to her the lot of land in the petition described, fronting forty-two feet on the north side of Lampton street, and extending back northwardly the same width ninety-seven feet to Hancock street; that he represented to her that the said property was well improved and was reasonably worth the sum of at least five thousand dollars ($5,000.00); that it was occupied by white tenants and that it yielded a rental of thirty-four ($34.00) dollars per month, and had done so continuously for a long time prior to said date." She further charged in her answer "That all of said statements so made to her by the defendant, Rector Johns, were fraudulent and untrue, and were known by him to be untrue at the time, and were made to her for the purpose of deceiving her and of inducing her to enter into the contract with him," set out above. She prayed the court to allow

her answer to be made a cross-petition against the defendant, Rector Johns, and that he be compelled to file in the suit the nine promisory notes given by Mrs. Masterson to Johns as part consideration for the conveyance of the house and lot, and that said notes be cancelled, and that the deed from Rector Johns to her for the house and lot be cancelled and annulled and that she have judgment against Johns for the sum of twenty-six hundred dollars, the value of her stock of goods, which she transferred to Johns.

Rector Johns answered denying that he fraudulently induced Mrs. Masterson to trade with him or that he in any manner overreached or defrauded her in the trade, but alleged the terms of the trade whereby he sold to Mrs. Masterson the house and lot and took her stock of general merchandise in as part pay and retained a lien upon the property for the balance of the unpaid purchase money, which was evidenced by nine (9) several notes, of one hundred dollars each, executed by Mrs. Masterson to him, and that all the said notes were yet unpaid and were, because of the agreement contained in the face of such notes, due and payable, and he sought to enforce his lien against the property for the collection of the said nine (9) notes.

The evidence is rather voluminous and contradictory. The trial court made the following findings and conclusions:

"From the very conflicting evidence in this case the court finds and concludes as follows:

"1. That $5,000.00 was the price asked by Johns for the Lampton street property and that that was the amount which Mrs. Masterson agreed to pay for it.

"2. That the Lampton street property was reasonably worth at the time of its purchase by Mrs. Masterson the sum of $3,000.00, and no more.

"3. That the stock of general merchandise, fixtures, &c., transferred by Mrs. Masterson to Johns as a part payment of the purchase price of the Lampton street property was of the reasonable market value of $2,000.00, and no more.

"4. That the weight of the evidence on the issue of fraud and over-reaching is in favor of Mrs. Masterson and that she is therefore entitled to relief.

"5. That the total consideration passing from Mrs. Masterson to Johns for the Lampton street property was as follows: Stock of merchandise, $2,000.00; mortgage debt assumed, $1,500.00; notes to Johns, $900.00;

and hence that she paid or contracted to pay $1,400 in excess of the reasonable value of that property.

"In view of the foregoing findings the court concludes that the counter-claim of Johns against Mrs. Masterson on the $900 of notes executed by her will have to be dismissed, and that she be awarded a judgment on her cross-petition against Johns in the sum of $500."

The chancellor declined to cancel the deed from Johns to Mrs. Masterson, but dismissed Johns' cross-petition against her in which he sought to recover on the nine (9) several notes of one hundred dollars each, and in addition gave Mrs. Masterson judgment over against Johns in the sum of five hundred dollars. This judgment is a radical departure from the contract made by the parties themselves. From the evidence in the record we conceive the facts to be that Mrs. Masterson, while conducting her business at New Hope, received information through some friends that Johns was engaged in buying and selling stores, and stocks of merchandise and otherwise trading in real estate and other property, whereupon she went to Louisville and called upon Johns and made known to him her desire to trade her store, at New Hope, for real property in Louisville. Thereupon Johns took Mrs. Masterson and showed her several different houses, which he proposed to trade to her for her store. None of these houses, however, suited Mrs. Masterson, and she declined to trade. Again she visited Mr. Johns, and he being sick, Mrs. Johns accompanied Mrs. Masterson to look at other property, but this, too, was unsatisfactory and no trade was consummated. After this, Mrs. Masterson again went to Louisville and saw Mr. Johns, and he took her to look at the property in question, located on Lampton street, and the trade complained of resulted. In the meantime, Rector Johns had been to New Hope and spent the day with Mrs. Masterson in looking at her store and talking over the trade.

Mrs. Masterson's chief complaint is that Rector Johns made false representations to her with reference to the location, neighborhood, improvement and occupants of the property; the rent yielded by the property and the value of the property. She complains that the house which she purchased from Johns was located in a negro settlement in Louisville, whereas, he represented to her that it was a white German settlement; that the rents were represented to be thirty-four dollars per month, but in fact never had exceeded twenty-six dollars per month; and that the property was worth greatly less

than five thousand dollars. It is admitted by both parties that Mrs. Masterson visited and examined the property before she purchased it. It is true that the house is located in a negro settlement, and was at the time visited by Mrs. Masterson occupied by colored tenants with whom she talked. From these tenants she had an opportunity, by the exercise of reasonable diligence, to ascertain the amount of rents derived from the house. Colored people were thickly populated about there, passing to and fro upon the streets. A number of witnesses who testified in the case say that it was obvious to any ordinary person that this locality was largely inhabited by colored people. At any rate, Mrs. Masterson saw and knew that the occupants of the house in question were colored people, and after her purchase continued to rent to them and collect rent, and she is not now in position to complain that the house was located in a negro settlement. The chancellor found the property to be of the value of three thousand dollars, which, from the evidence, is approximately correct. He also found that the stock of goods, which was rated at twenty-six hundred dollars in the trade, were worth only two thousand dollars. The evidence is very conflicting upon the value of the house as well as the stock of goods. Some witnesses acquainted with the value of property in Louisville stated that the house and lot were worth four to five thousand dollars, while others place a much less value upon it. Some witnesses introduced regarding the value of the stock of goods placed it as low as eight hundred dollars, while others stated it was worth as much as fifteen hundred to two thousand dollars. It is obvious that both Mrs. Masterson and Mr. Johns in their trade rated their property too high. At any rate, these parties were dealing at arm's length. They had no personal acquaintance before they entered into this deal. There was no relation of trust or fidelity existing between them, and each was entitled to make the best bargain possible, untainted by fraud or misrepresentation. Moreover, Mrs. Masterson immediately upon the conclusion of the trade, took possession and control of the house and lot on Lampton street, and through her agents collected and converted the rents to her own use for more than one year, and in fact up until after the commencement of this action by Eng Schmitt, to foreclose his mortgage, and this, too, without complaint or objection on her part that she had been overreached or defrauded in the trade with Johns.

In fact, some months after the trade and after she had the property in possession with ample opportunity to examine it and to know its location and surroundings as well as the amount of rent arising from it, Mrs. Masterson wrote Mr. Johns a letter, in which she sought to trade her second stock of goods for other real property which he owned in Louisville, and this letter is made a part of the evidence. Her act amounted to a ratification of the fraud, if any there was. If Mrs. Masterson felt aggrieved at the action of Mr. Johns, or regarded the representations of Johns as fraudulent, she should not have waited such a great length of time after discovering the fraud, to assert her rights, enjoying the benefits of the trade. In doing so she was guilty of laches, which precludes her proceeding now. As said in Mackenzie v. Eschmann's Exors., 174 Ky. 454:

"It is the rule that a party to a contract obtained by fraud has but one election to repudiate or rescind the same. If he once determines his election, it is determined forever. Hence, if it is shown that he has at any time, after knowledge of fraud, either by express words, or by unequivocal acts, affirmed the contract, his election is irrevocable. By clearly manifesting his intention to abide by the contract, he condones the fraud, and is without remedy. He cannot with knowledge of the fraud enjoy the benefits of the contract, and then file an action for deceit. Hartford Life Ins. Co. v. Hanlon, 139 Ky. 346, 104 S. W. 729; Smith v. Lewisport Bank, 27 R. 406."

It never becomes the duty of a chancellor to make a new bargain for litigants to conform to what he thinks they should have made. All persons *sui juris* may trade or dispose of their property at will, and whether the bargain is good or bad does not affect the binding force of the contract. Courts are constituted for the purpose of construing and enforcing contracts, not to make them. If the deed from Johns to Mrs. Masterson was not vitiated by fraud, then the notes should not have been cancelled nor should Mrs. Masterson have been awarded a judgment for five hundred dollars over against Johns. In this the chancellor was in error. The cross-petition of Mrs. Masterson against Mr. Johns should have been dismissed, and the relief sought by Johns against Mrs. Masterson should have been granted, and upon a return of the case the chancellor will enter a decree in conformity with this opinion.

Judgment affirmed.