## Kaelin, Executrix v. Kaelin.

### (Decided May 26, 1925.)

### Appeal from Jefferson Circuit Court (Common Pleas, Fourth Division).

1. Contracts—Agreement to Advance Money, for Purchase of Trucks to be Resold, Held to Contemplate Repayment within Reasonable Time.—Agreement to furnish money for purchase of trucks, which were to be resold and a commission paid lender, held to contemplate repayment within reasonable time.

2. Contracts—Three or More Years Held Not Reasonable Time to Repay Loan under Agreement to Purchase and Resell Trucks.—Where plaintiff agreed to advance money for purchase of trucks to be resold and commission paid him, repayment of advance for one truck held due where five years had elapsed after purchase, and three years after giving of note for price, notwithstanding trucks may not have been resold.

3. Principal and Agent—Employe in Garage Required to Bear Loss on Car which he Sold on Credit Over Protest of Manager.—Employe in brother's garage, who sold car, the purchase of which he had financed, for credit over objections of brother's manager, held bound to bear any loss.

4. Contracts—Agreement, Providing for Advance to be Used as Deposit to Secure Credit with Third Party, Held to Require Return within Reasonable Time.—Agreement, providing for advance by party financing dealer's purchase of trucks of $250.00 to be used as deposit with manufacturer as security, held to contemplate repayment within reasonable time, or at least when parties ceased to operate under agreement, notwithstanding fact that deposit had not been repaid by manufacturer which was in hands of receiver.

E. J. COONEY and SHACKELFORD MILLER for appellant.

DOOLAN & DOOLAN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

Two brothers, Ben and Alphonse Kaelin, entered into a verbal contract in 1917, whereby Ben, the elder agreed to furnish the money to pay for the factory price of all trucks purchased by Alphonse in his business of marketing auto trucks and in building bodies therefor, in Louisville, Ben to receive five (5%) per cent commission on the factory price of each truck to be paid at the time of sale by Alphonse, and in case Alphonse did not return the purchase price to Ben immediately upon the sale of the truck, then Ben was to receive six per cent (6%) interest upon the money until returned to him. Under this arrangement about 120 trucks were handled from 1917 to 1921, when the brothers disagreed and the arrangement was discontinued.

A settlement was had between the brothers as of February 5, 1921. At that time it was found that Alphonse was due Ben $7,836.50 on money advanced, commissions, interest, etc., and this sum was paid by Alphonse to Ben by certified check now in the record. On the check is written in pen these words, "Settlement in full to date." At the time of the making of this settlement there were four trucks on hand unsold, all of which had been paid for with money furnished by Ben. To secure this money Alphonse executed to his brother four separate notes representing the cost price of the trucks, and

secured the notes by four chattel mortgages on the four unsold trucks. Since that time and before judgment in this case two of the four trucks were sold and the factory price plus five per cent (5%) paid to Ben, in accordance with the contract. The other two trucks form the basis of this controversy, which was commenced by Ben against Alphonse to recover on several items alleged to be due for money furnished under the contract which we have recited.

The lower court entered a judgment in favor of appellee, Ben Kaelin, for the total sum of $2,572.73 upon three items: $1,272.71 for one of the trucks he had on hands in the garage, unsold; $1,050.02 for truck delivered to Gaines at Carrollton, and $250.00 money advanced by Ben to Alphonse to be placed with the Dort automobile people as deposit to secure credit. All other claims of Ben were denied by the chancellor, and as he has prosecuted no cross-appeal, it will be unnecessary to notice them further.

During the pendency of the litigation Alphonse died; but his side of the case is proven by the testimony of his manager, Janesen. Alphonse defended on the theory that under the terms of the contract he was not to pay Ben for the trucks nor pay the five per cent commission for the use of the money until the trucks were sold, and inasmuch as the four trucks in question had not been sold at the commencement of the action, nothing was due Ben and his cause should be dismissed. In substance he made the same defense to the claim for $250.00 deposited with the Dort Automobile Company. Alphonse claims this sum was not to be returned to Ben until it was repaid to him by the Dort people, and as the Dort people had gone into the hands of a receiver, though yet operating, and had not repaid the money, he was not liable to Ben for this sum.

The truck on hands in Alphonse's garage at the time of the commencement of the action and which had not been sold at the time of the rendition of the judgment from which this appeal is prosecuted was acquired under the contract which we have recited. Ben furnished the money to pay the factory price. Alphonse was to sell it and pay Ben five per cent commission for the use of the money. Alphonse had been unable to sell that particular truck although he had sold many others and had paid to his brother approximately $7,000.00 in commissions. Some trucks would be received one day and sold the next;

others would be sold in a few days and others in a few weeks or months, but this one had been on hands for two or three years at the time of the settlement in February, 1921. Notwithstanding this delay Alphonse insisted that as he had used diligence to sell the truck and had failed to so do, he was not in fault, and that Ben was not entitled to recover on this item. Ben insists he was entitled to recover the value of the truck because it was within the contemplation of the contracting parties that the trucks would be sold within a reasonable time and that more than a reasonable time for the sale of the truck had passed and, therefore, his money was due. The chancellor accepted this view, saying, "I think it must be admitted that it was implied in this agreement that defendant (Alphonse) would use reasonable diligence in marketing this truck, and that an unexplained postponement of its sale for an unreasonable time would entitle plaintiff to repayment. It is now more than five years since this truck was purchased and put on sale. It is more than three years since the note was given. I do not think that defendant's explanation of this delay is entirely satisfactory, and I conclude, therefore, that plaintiff (Ben) is entitled to recover $1,212.00 (cost of truck), with a commission of five per cent."

In all probability this truck has been sold since the judgment was rendered, but whether it has been or not we are inclined to the view which the chancellor reached and stated in his excellent opinion. Of course the parties never contemplated that trucks purchased under the agreement would be carried in stock for three or four years. It was Alphonse's job to sell them. If he failed to do so within a reasonable time his brother had the option of demanding a return of his money with five per cent. The judgment of the chancellor must to this extent be affirmed.

The other truck in controversy is known in the record as "the Gaines truck." While the contract existed between Ben and Alphonse and things were going well with them, Ben was employed by Alphonse to help about the garage and was receiving $15.00 a week part of the time, and $18.00 per week the balance of the time. He was not the manager of the garage but an agent or helper at the place. Janesen was the manager in charge of the place when Alphonse was absent, as he was frequently out soliciting business. On one occasion in May, 1919, Gaines,

who operated a garage in Carrollton, came to Alphonse's garage for the purpose of securing an "All-American truck," one of the types in which Alphonse dealt. Alphonse being absent from the garage, Gaines approached Janesen, the manager, and wanted to buy the truck on time but Janesen having had, as he says, some experience with Gaines in the sale of a tractor and that Gaines had proven a bad customer, declined to let Gaines have the truck. Appellee, Ben Kaelin, was in the garage and Janesen says he informed Ben of Gaines' wish to purchase the truck and of his refusal to let him have it unless he paid cash. Later in the day Gaines persuaded Ben to let him take the truck. Janesen testifies he was protesting against the truck leaving the garage but that Ben let Gaines have it over his protest. Ben does not agree to all that Janesen testifies, but admits that he let Gaines have the truck and says he did not know at the time that Gaines was slow pay or that he had had any disagreement with Alphonse over a tractor, and that he did not receive this information until after he let Gaines have the truck. It is the position of the executrix of Alphonse that Ben, having let Gaines have the truck over the protest of the manager of the garage, should assume this item and take Gaines for it. She also insists that in the settlement of February 5, 1921, it was agreed between Alphonse and Ben that Ben should accept the claim against Gaines in satisfaction of this item, and whatever was recovered in the suit against Gaines then pending to go to Ben. This is proven by the testimony of Janesen, the manager. While Ben denies this in part it is apparent from all the evidence that he let Gaines have the truck over the objection of the manager of the garage in the absence of Alphonse. We conclude, therefore, that he should sustain the loss from the Gaines account, if any there may be. The nature of the litigation now pending between Kaelin and Gaines is not disclosed, but it is shown that a suit concerning this claim is pending. The chancellor, after very full consideration of the facts with respect to this item, held Alphonse liable to Ben for $1,050.02 on the Gaines truck. It follows, therefore, that the judgment of the chancellor on this item must be reversed.

The only remaining item is that of the deposit of $250.00, the money which was furnished by Ben to Alphonse to be placed with the Dort company to enable Al-

phonse to get parts and supplies for trucks without having them shipped c. o. d. The sum was deposited with the understanding it was to remain as a credit with the concern. No time was fixed for its return. At the time of the settlement between the brothers in February, 1921, it had been up for some three or four years. The deposit, of course, was made by Alphonse for his use and benefit. He obtained the money from Ben. The brothers disagreed about when the $250.00 was to be returned to Ben, but considering all the facts it seems but natural that they should have contemplated when the money was furnished by Ben that it should be returned to him within a reasonable time, certainly when the brothers ceased to operate under the contract. The mere fact that the Dort company went into the hands of a receiver and had not returned the money to Alphonse does not appear to us to be a sufficient excuse. We think the estate of Alphonse is bound for this $250.00, and the chancellor's judgment upon this item must be affirmed.

For the reasons indicated the judgment is affirmed in part and reversed in part.