## Cox v. Riggins, et al.

(Decided January 31, 1928.)

### Appeal from Mercer Circuit Court.

1. Bills and Notes.—Under Ky. Stats., sec. 3720b51, holder of negotiable notes could sue thereon, although notes were assigned to him after they were due, and for purpose of collection.

2. Bills and Notes.—Where notes were assigned to plaintiff after maturity, maker could interpose any defense he might have had, if they had been sued on by original payees.

3. Vendor and Purchaser.—Where purchaser of land, after making contract therefor, and paying part of price, learned that land was not adapted to growing alfalfa, as represented by vendor's agent, thereafter went forward with contract, and paid a percentage of the purchase price then due, he thereby elected to abide by contract and condone the fraud.

4. Contracts.—When knowledge that fraud has been committed in procuring contract is brought home to aggrieved party, his election to repudiate or rescind contract for fraud must be made seasonably.

5. Contracts.—When knowledge that fraud has been committed in procuring contract is brought home to aggrieved party, further pursuit of benefits accruing to him under contract constitutes his election to abide by contract and condone fraud.

6. Contracts.—Where knowledge of fraud in procuring contract is brought home to aggrieved party, election by him to abide by contract and condone fraud is irrevocable, and he cannot thereafter be relieved of obligations under contract because of fraud in procuring it.

7.  Escrows.—Where notes for part price of land with deed of trust
    to secure them and deed for land to maker of note were placed
    in escrow, to be delivered on further payment by purchaser, and
    vendor complied with contract to furnish abstract of title, to be
    approved by purchaser's attorney, and purchaser thereafter sub-
    stantially executed part of his contract to pay a percentage of the
    price when deed was to be delivered to him, he could not claim,
    in suit on notes, that payees had no right to secure them from
    the escrow agent.

C. E. RANKIN for appellant.

STONE & HARLAN for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

Appellant, John H. Cox, instituted this action in the Mercer circuit court against appellees J. W. Riggins et al., by which he sought to recover the principal and interest of two promissory notes for $4,587.50 each, and to set aside as fraudulent certain conveyances by Riggins to his wife and son, for the alleged reason that they were made for the fraudulent purpose of preventing the collection of the notes sued on. The action on the notes was defended by appellee Riggins upon the ground that they had been procured by fraud; and on the trial hereof below upon that issue, tried out of chancery, the jury found in favor of appellee. Judgment was thereupon entered dismissing appellant's petition, and hence the appeal.

The right of appellant to prosecute the action was questioned below, but this question was properly decided adversely to the contention of appellee. This contention was based upon the admitted facts that the notes in question were assigned to appellant, Cox, after they were due, and for the purpose of collection only. Though these things be true, since the notes sued on were negotiable instruments, under the provisions of section 3720b51, Kentucky Statutes, reading: "The holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument," appellant, Cox, their holder, could sue on them. This question was fully discussed in McGowan et al. v. People's Bank, 185 Ky. 20, 213 S. W. 579, and what was there said need not here be repeated. The fact that the notes were assigned to appellant after maturity, and when overdue, enabled appellee Riggins, their maker, to

interpose any defenses that he might have had, if they had been sued on by the original payees.

Appellee Riggins relied upon the following state of facts as constituting the fraud perpetrated by the payees to procure his signature to the notes: In the summer of 1920 he went to Clay county, Miss., with the intention, if a suitable location could be found, to purchase a farm and locate there. He encountered an agent of the payees of the notes, who had authority to act for them in the sale of a farm owned by them consisting of 167 acres of land. Appellee stated to this agent that he desired to purchase a farm that would produce good alfalfa, and explained that he was unfamiliar with, and unable to judge for himself of, alfalfa land. The agent took him upon, and showed to him, the 167 acre farm, and, in order to induce him to buy it, represented that all of it lying east of a certain ditch, there being approximately 100 acres of it so lying, was first-class alfalfa land. He relied upon this representation, and, believing it to be true, purchased the farm, and executed the notes sued on as part of the purchase price. He charged that he afterwards discovered that only a very small portion of the farm lying east of the ditch mentioned would produce alfalfa, and that the representation made, which was relied upon by him in purchasing the farm, was false when made, and was known to be so, and was made for the fraudulent purpose of inducing him to rely upon it in purchasing the farm.

As the case is presented to this court, attorneys for appellant and appellees are in violent discord as to whether this representation, if made, would amount to actionable fraud. It is the contention of appellant that the parties were dealing at arm's length; that appellee Riggins was and had been a farmer all his life, and had every opportunity to ascertain whether the land which he thoroughly examined before he purchased was alfalfa producing land; and that, under the circumstances, the representations, if made, at most could have been understood as "dealer's talk" or "puffing" of his wares upon the part of the vendor. On the other hand, appellees contend that it was a false representation with reference to a material fact, and that, since all of the other elements necessary to enable it to be relied upon as fraud were present, it may be relied upon as such to avoid the notes executed for the tract of land. The necessity for

determining this question is avoided by other facts ap-: pearing.

Conceding that appellee Riggins was induced to purchase the farm by the false representation of the agent of the vendors that all of it lying east of the ditch in question was first-class alfalfa land, and that this false representation was fraudulent, and authorized a rescission of the contract, other principles of law uniformly applied in cases of fraud of this character seem to be conclusive of the rights of the parties to this contro-' versy. In Mackenzie v. Eschmann's Executors, 174 Ky. 450, 192 S. W. 521, the principle in question was thus written:

> "It is the rule that a party to a contract obtained by fraud has but one election to repudiate or rescind the same. If he once determines his election, it is determined forever. Hence, if it is shown that he has at any time after knowledge of fraud, either by express words, or by unequivocal acts, affirmed the contract, his election is irrevocable. By clearly manifesting his intention to abide by the contract, he condones the fraud, and is without remedy. He cannot with knowledge of the fraud enjoy the benefits of the contract, and then file an action for deceit. Hartford Life Ins. Co. v. Hanlon, 139 Ky. 346, 104 S. W. 729; Smith v. Lewisport Bank, 27 (Ky. Law) Rep. 406, 85 S. W. 219."

The facts of this case, conclusive of the rights of the parties under the foregoing principle of law, are furnished by the testimony of appellee Riggins himself, and are undisputed. The deal for the farm in question was made August 3, 1920. On that date the vendors in' person and the vendee executed a written contract of sale binding them to the trade they made. Appellee Riggins paid 10 per cent. of the purchase price in cash, and executed the notes sued on herein. At the same time he executed a note for 23 1/3 per cent. of the purchase price, payable not later than January 10, 1921. Prior to this time, appellee Riggins had resided in Casey county, Ky., and immediately after the consummation of the deal returned to his home there. Under the contract for the purchase of the farm in question, possession was to be delivered to appellee January 1, 1921.

Appellee Riggins is the father of a son who was then 23 years of age, and who then was a graduate of the

agricultural course at Kentucky State University. The son was then following teaching as a profession, and had been employed as a teacher in some school in Louisiana, the term of which began early in September, 1920. Within three weeks after appellee Riggins concluded the deal for the farm, this son of his, on his way to the place in Louisiana where he was to teach stopped over, and made a thorough examination of it. He testified that he then discovered that his father had been defrauded in the deal for the farm, in that he discovered that none of the land was first-class alfalfa land, and that only a very limited area of it would produce alfalfa at all. He testified fully as to the evidences of these facts which he then discovered, and which were to be discovered by one possessing a knowledge of alfalfa land upon a mere superficial examination of the farm. He testified that he immediately wrote his father advising him that in the purchase of the farm he had been "taken in as a sucker"; that the farm was not what it had been represented to him to be, alfalfa producing land at all.

Appellee Riggins testified that he received this letter from his son within three weeks after he had made the deal. After having been given this positive information as to the fraud he now relies upon to avoid the deal for the farm and payment of the notes executed for its purchase price, which were sued on herein, appellee, according to his own testimony, took no steps at all to inform himself further about whether the land he had contracted for was alfalfa producing land; and, notwithstanding the exposure of the fraud that had been practiced upon him in procuring him to purchase it, when January 1st came around, appellee proceeded to go forward with the contract, and paid 23 1/3 per cent. of the purchase price of the farm then due; took possession of it, and leased it to a tenant. The deal with the tenant was a crop-sharing arrangement, and during the year 1921 appellee received and appropriated to his own use his portion of the crops raised upon this farm by his tenant. These facts bring this case clearly within the principle of law quoted, supra.

When knowledge of the fact that fraud has been committed in procuring a contract is brought home to him, the party to it thereby aggrieved is put upon his election. The election to repudiate or rescind the contract for the fraud must be made seasonably. Any further pursuit of the benefits accruing to him under the

contract constitute his election to abide by the contract and condone the fraud. Such an election is irrevocable, and he may not thereafter again seek to be relieved of the obligations placed upon him by the terms of the contract because of the fraud practiced upon him in procuring him to become a party to it, because, by electing to pursue the benefits accruing to him under the contract, he has elected to abide by it, and thereby he has condoned the fraud. The Mackenzie opinion, supra, and the other opinions cited therein, deal fully with this question. This principle has subsequently been applied by this court as conclusive in Johns v. Masterson, 176 Ky. 399, 195 S. W. 819, wherein, so far as they affect the principles of law now under consideration, the facts were the same. See, also, Goodin v. Turner, 222 Ky. 132, 300 S. W. 327.

When the contract by which appellant purchased the 167 acres of land was reduced to writing and signed by the parties to be bound thereby, appellee Riggins gave his check for the amount of the cash payment amounting to 10 per cent. of the purchase price. He executed notes payable to the vendors of the land for 23 1/3 per cent. of the purchase price, payable not later than January 10, 1921, as well as the two notes sued on herein for something over $4,000 each. The agreement was that the grantors should prepare a deed of conveyance to be delivered to the grantee upon the payment of the note for 23 1/3 per cent. of the purchase price, which was due not later than January 10, 1921. The grantee should execute a deed of trust to secure the payment of the two notes sued on herein. The grantors were to have an abstract of title made which was to be approved by an attorney designated by the grantee. All of these papers were executed and delivered to a bank in West Point, Miss., to be held in escrow upon these terms: The check for the cash payment was to be cashed, and its proceeds delivered to the grantors. The deed executed by the grantors was to be held until the note for 23 1/3 per cent. of the purchase price was paid, and then was to be delivered to the grantee, and simultaneously with its delivery the trust deed was to be delivered to the grantors. It is contended for appellee that the appellant was without authority to maintain this action on the notes, because the terms of the escrow agreement were not complied with, and the escrow agent unlawfully delivered the notes to the grantors in the deed. In support of this contention it was pleaded that the deed of conveyance

and abstract of title was never executed and delivered in accordance with the terms of the contract, but the evidence is altogether to the contrary. The deed of conveyance was prepared and duly executed by the owners of the farm, and delivered to the escrow agent within the time specified. The abstract of title was prepared and approved by the attorney designated. The only particular in which the escrow agreement has not been strictly complied with is in so far as it provided that appellee Riggins should pay the note for 23 1/3 per cent. by January 10, 1921, before the escrow agent might deliver the deed to him.

The vendors of the farm in question performed strictly all of their part of the undertaking toward carrying out the contract of sale, and complied strictly with the terms of the escrow agreement. To hold with appellee's contention would be to hold that he could take advantage of his own wrongful failure to comply with the contract to effect its avoidance. Clearly this may not be done. The provision that the deed should not be delivered until the note for the 23 1/3 per cent. of the purchase price was paid was inserted into the escrow agreement for the protection and benefit of the vendors of the land alone. A chapter of Page on Contracts is devoted to the subject "Escrow Agreements," beginning with section 1192. From section 1195, the following text: "A party to a delivery in escrow, for whose benefit certain conditions were imposed, may, however, waive such conditions and allow the deed to be delivered without the performance thereof," seems to succinctly state the principle of law governing this transaction under its facts. Smith v. Goodrich, 167 Ill. 46, 47 N. E. 316, is cited as supporting this principle, and a consideration of that case discloses facts in all essential particulars similar to those now here involved. The deed had been executed and placed in escrow to be delivered to the grantee upon the payment of a part of the purchase price evidenced by a note. In the action on the note, the defense was sought to be interposed that it had been wrongfully obtained from the escrow agent. Among other things in the opinion is was said:

> "The holder of the note, who, for his own benefit, had the deed and note placed as an escrow, had a right to waive the advantage he had by the retention of the deed, and allow it to be delivered."

In addition to these things, there appears to have been substantial compliance upon the part of the appellee Riggins with the terms of the escrow agreement. He failed by January 10, 1921, to pay in full the 23 1/3 per cent. of the purchase price then due, but he paid a substantial portion of it in cash, and assigned unto the payees in the note certain promissory notes owned and held by him as collateral security for the payment of the balance thereof.

In view of these facts, the court is of the opinion that appellee is in no position to question the right of the payees of the notes sued on herein to have obtained them from the escrow agent or the method by which that was done. This conclusion makes it unnecessary to consider and determine the contention of appellee that the judgment of the Mississippi court which directed the notes sued on to be delivered by the escrow agent to the payees was void upon the theory that the publication of the notice to appellee was defective and insufficient.

For the reasons indicated, this court is constrained to the view that, upon the conclusion of the evidence, the trial court should have peremptorily instructed the jury to find for appellant the full amount of the two notes sued on.

Wherefore the judgment herein is reversed, and the cause remanded for other proceedings not inconsistent herewith.