## Mock v. Trustees of First Baptist Church of Newport.

(Decided Jan. 9, 1934.)

H. O. WILLIAMS, GUTHRIE & WADE and THAD CHEATHAM for appellant.

HORACE ROOT for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal is from a judgment for the defendants, the appellees, Trustees of the First Baptist Church of Newport, in a suit to recover the balance claimed by Otto D. Mock, appellant, to be due for services as architect in preparing plans and specifications for a Sunday school building. After several conferences with the building committee of the church and the acceptance of preliminary sketches and views, a form of written contract of employment was submitted to the church authorities in February, 1924. It was not immediately signed by the committee, but the conferences continued with the architect, and substantial services had been rendered by him when the contract was executed and delivered to Mock in May, 1924. It became the basis of this litigation.

We need refer to only those parts of the contract which seem to be material to the issue.

Article 3 provided for the payment to the architect of the sum of 2½ per cent. of the total cost of the completed building. But, if it should be found that the church was unable to erect the building at the time of

opening the contractors' estimates, he should then receive his full compensation based upon the lowest bona fide estimate. In this section it is stipulated that:

> "Pending the contractors' estimates of the cost of said building $55,000 will be used as a figure from which to calculate the architect's fee, but final settlement to be made on the total cost of this portion of the building."

Article 5 provided that payments should be made as follows: 1 per cent. upon the completion of the plans and scale details in accordance with the accepted sketch plans. Second payment should be sufficient to increase the total to 2 per cent. to be paid upon the opening of bids or the appointment of a builder. Final payment of a sufficient amount to increase the total to $2\frac{1}{2}$ per cent. was to be made when the building was accepted and approved by the architect. Article 6 stipulated the agreement that, if for some unknown reason the erection of the building should be deferred after the completion of the drawings and specifications, the architect should be paid for his services as stated in article 3.

Satisfactory plans and specifications having been completed in detail, bids for the construction were received in September, the lowest of which was $159,254. This was so much in excess of expectations that the bids were rejected. The committee and the architect set about to revise the plans in order to reduce the cost. In view of subsequent developments, it may be said that the evidence justifies the conclusion that from the time the project was initiated the church's program or desire became progressively more ambitious until the bids were received, and thereafter the committee entertained the commendable hope to secure such a commodious structure as would be adequate for their needs, yet within what they regarded as their church's financial limitations. It is not clear whether both the original and the modified plans had been abandoned for the time being, but in the latter part of September Mr. Mock rendered a bill for his services amounting to $3981, which was $2\frac{1}{2}$ per cent. of the lowest bid of $159,254 based on the original plans, less a credit of $650 previously paid him. This was in accordance with the terms of the contract. The chairman then advised Mock that the committee did not intend to abandon the project, but would continue their efforts to erect the building. It was further stated in the communication that

the committee did not feel that they owed him the sum claimed, and he was invited to confer with them. On October 4th a conference was held. The parties are not now quite agreed as to what was then verbally agreed. A day or so later $1,150 was sent to Mock as the "amount due to date"; it being said in the letter that this was sent "as per agreement." Six months thereafter, in April, 1925, after securing some revised detailed drawings from the architect, the church began the erection of two stories of the four-story structure according to the original design. A temporary roof was put on, the idea being to complete the building at some future time. This work was done under the supervision of another architect, who lived in Newport, at a cost of about $80,000. To avoid any suggestion of wrong or impropriety, it should be said that no question is raised as to the right of the church to use these plans.

In June, 1925, Mock asked for the payment of $700 on account, but the committee advised him that under the agreement there was no money due him. In June, 1928, Mock filed this suit to recover his fee of $3,980, less the $1,800 previously paid. The church denied that the plaintiff had performed his contract, and further pleaded that the contract sued upon had been obtained by misrepresentation, in that the plaintiff had represented that the building planned could be erected for $55,000, whereas it developed that it would cost $160,-000, and the sum was so excessive as to be beyond the church's financial ability, and therefore the bids for the work had been rejected. The further defense was interposed that there had been a settlement and compromise on October 4, 1924, under which the architect had accepted a sum sufficient to bring the total payment to him of $1,800, and had agreed to wait the future payment of fees and compensation until such time as the church in its judgment and discretion was financially able and deemed it advisable to erect and complete the building; that two stories had been completed, but the church, in its judgment and discretion and in fact, had been financially unable to erect or complete the four-story building as contemplated by the contract. The issue as to the terms of the compromise agreement alone was submitted to the jury, and, as stated, the verdict was for the defendant.

All the evidence respecting the procurement and execution of the contract sued on, which was admitted

under the plea of misrepresentation, must be placed in the background. It would seem that the defendant realized by the time the evidence was concluded that this plea was untenable. The facts clearly bring the case within the legal principle thus well stated in Cox v. Riggins, 223 Ky. 510, 4 S. W. (2d) 403, 405:

"When knowledge of the fact that fraud has been committed in procuring a contract is brought home to him, the party to it thereby aggrieved is put upon his election. The election to repudiate or rescind the contract for the fraud must be made seasonably. Any further pursuit of the benefits accruing to him under the contract constitute his election to abide by the contract and condone the fraud. Such an election is irrevocable, and he may not thereafter again seek to be relieved of the obligations placed upon him by the terms of the contract because of the fraud practiced upon him in procuring him to become a party to it, because, by electing to pursue the benefits accruing to him under the contract, he has elected to abide by it, and thereby he has condoned the fraud."

See, also, McKenzie v. Eschmann's Executors, 174 Ky. 450, 192 S. W. 521; Johns v. Masterson, 176 Ky. 399, 195 S. W. 819; Hofgesang v. Silver, 232 Ky. 503, 23 S. W. (2d) 945, 68 A. L. R. 1481; Cornett v. Kentucky River Coal Co., 175 Ky. 718, 195 S. W. 149.

In taking this step in the development of the opinion and disregarding the evidence as to representations, it should in fairness be said that throughout the architect showed a commendable patience and willingness to cooperate with the committee in obtaining their desires, and, considering the entire situation and relation of the parties, we do not think the evidence justified the claim that the architect had wrongfully induced the committee to enter into the contract, or that the allegation of fraud was justified.

We consider the issue as to the compromise settlement. For the ultimate decision, we may place to one side the plaintiff's claim as to the facts, that he was to wait for the balance of his compensation only until the construction should begin. For the argument, we may deny his claim of law that, conceding the factual contentions of the defendants, there was no consideration for the agreement to extend the time of payment. We

may make predominant and accept as conclusive the defendant's version of the settlement; that is, that the plaintiff accepted the balance of $1,800 and agreed to wait until the building was completed for the balance due him, based upon the cost of the building, and that the church had not since regarded itself as being financially able to construct the house. Such an agreement cannot be construed as requiring the architect to wait more than a reasonable time. He did not mean that he would wait forever. It cannot be conceived that he intended to surrender a just claim, which would be the result should the letter of the condition be applied and the church should abandon its purpose to erect the building as designed. It was agreed that payment was to be made upon the happening of an occurrence. When that is the condition, the law adds to the contract by implication the qualification that it shall be done in a reasonable time, depending upon the particular circumstances of the case. Nunez v. Dautel, 19 Wall. 560, 22 L. Ed. 161, and note; 21 R. C. L. 11. The rule is thus stated in section 2100 of Page on Contracts:

"The time of performance is sometimes made to depend upon the doing of some specified act other than that which the parties to the contract agree to do or it is made to depend upon the happening of some event which the parties to the contract do not covenant to cause to happen. The tendency of the courts is to hold that unless the contract shows clearly that such an action is an express condition, the provision with reference to such act is inserted in order to fix the time of performance, but not to make the doing of such act or the happening of such event a condition precedent. If this is the intention of the parties, the fact that such act is not performed or that such event does not happen, does not discharge the contract, and the act which the parties agree to do upon the performance of such act or upon the happening of such event, is to be performed in at least a reasonable time. This principle has been applied to a promise to pay when the maker has finished a church then building; or to pay when a certain dispute is settled; or 'as soon as the crop can be sold or the money raised from any other source.' "

And the authorities are to the effect that a promise to pay when the promisor is financially able to do so is

to be construed to mean that payment is to be made within a reasonable time. 6 R. C. L. 284. So, too, in the absence of circumstances showing it to be perpetual, a forbearance to sue for an indefinite time is regarded as calling for a reasonable period. Williston on Contracts, sec. 38.

The general rule is stated and applied in a number of our cases, of which the following more recent ones may be cited as typical: Kaelin v. Kaelin, 209 Ky. 250, 272 S. W. 728; Thomson v. Coleman, 219 Ky. 524, 293 S. W. 1089; Fyffe v. Skaggs, 246 Ky. 5, 54 S. W. (2d) 369.

Who will say that four years is not a reasonable time for the architect to have waited before filing suit. It was over eight years before the judgment was rendered. The court is of opinion that there was nothing to submit to the jury, and that the plaintiff was entitled to a judgment for the balance due him.

However, he was not entitled to interest from October 6, 1924, as prayed, for it was necessary that he should make the demand for this balance when under the terms of the compromise agreement it should be considered as payable. 21 R. C. L. 14. The filing of the petition should be considered as making such a demand. Brown & Bro. v. Lapp, 77 S. W. 194, 25 Ky. Law Rep. 1134; Caldwell & Drake v. Pierce, 154 Ky. 771, 159 S. W. 559.

The judgment is accordingly reversed for consistent proceedings.