## Fox v. Buckingham.

(Devided November 27, 1928.)

(As Modified, on Denial of Rehearing, March 22, 1929.)

PRICHARD, MALIN & SMITH and KIRK, KIRK and WELLS for appellant.

FRED HOWES for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

On the 20th day of December, 1923, the appellee, Claude Buckingham, trustee, was the owner and in the possession of a certain oil and gas lease in Johnson county, known as the "Hen Blanton lease." On that day he entered into a contract with the appellant, David Fox, which is the subject of controversy in this action. The lease had been the property of the Castle Petroleum Company, and had been conveyed to Buckingham as trustee for that company. The Castle Petroleum Company had become indebted to five creditors in a sum aggregating $3,762. Some of the officers of the company had assumed the payment of this indebtedness, or some part of it. The Branchland Supply Company was a creditor in

the amount of $1,012, and the appellant, David Fox, was the president of that company. The contract entered into on the date named in the preamble set out the indebtedness of the company, and then followed these provisions:

"Whereas, the first party has this day sold and conveyed the lease hereinafter described to the second party, subject to the conditions and reservations hereinafter recited, and,

"Whereas the second party hereby agrees to pay off and discharge said indebtedness from the first revenue derived from the production of oil from said lease in the following manner: 1. All revenue derived from the production of oil shall be applied in the ratio of one half to developing and operating expenses and one half to the payment of the said indebtedness above enumerated in the ratio of said debts. 2. Upon the payment and liquidation of said indebtedness and of said developing and operating expenses said lease shall become the property of the second party subject, however, to an undivided one sixteenth (1/16) royalty interest which is hereby reserved unto the first party and,

"Whereas, the payment of said indebtedness in the manner hereinbefore prescribed and reservation of said royalty interest as hereinbefore set out constitute the consideration for the execution of this agreement.

"Now, therefore, in consideration of the premises and of the payment of the debts as herein before provided and reservation of the royalty as herein before recited the first party hereby sells, grants and conveys unto the second party the following described oil and gas lease, etc."

The description then follows, and the conclusion is a covenant of general warranty.

The leasehold had two wells on it at the time of this contract producing a small quantity of oil. The appellant did not take possession of the leasehold, neither did he pump the wells, although they were equipped for pumping, nor did he make any effort to develop the property.

About four months after the contract had been executed, the appellee wrote a letter to appellant notifying him that he was bound to carry out the contract and he

was expecting him to do so. Appellant made no response to this demand. Whereupon appellee instituted this action.

It is alleged in the petition that the contract was made, and it is copied at length therein. The breach of the covenants is alleged. There is an allegation that appellant is indebted to appellee by reason of the contract in the sum of $2,750. This is the amount of the indebtedness which is mentioned in the contract omitting the debt of the Branchland Supply Company of which appellant is president. The prayer is for a judgment against appellant for $2,750, and that he be compelled to develop the property so that appellee may receive the royalty provided for in the contract.

Appellee obtained a general order of attachment which was levied upon certain equipment located on a lease belonging to appellant in Johnson county. An agreement was entered into between the parties relating to this attached property, wherein it was agreed that the appellant might sell the attached property for $800, provided he should execute a bond to pay to appellee that sum if he should be entitled thereto at the conclusion of the action. A bond was accordingly executed by appellant conditioned that he would perform the judgment of the court up to the sum of $800, which bond was signed for him by the United States Fidelity & Guaranty Company. The attachment was also served on Branchland Supply Company. It answered, and disclosed that it was not indebted to appellant in any sum, but set out that he was the owner of 312.76 shares of stock in the company of the par value of $100 each, and that he was indebted to the company in the sum of $6,000, and the stock was held as collateral.

The appellant filed his answer, which is a traverse of all of the allegations in the petition. Much proof was taken mainly directed to the question as to whether the contract was entered into. The appellant contended that he did not make any such contract, and that the appellee intended only to transfer the lease to him so that he might sell it if he could and apply the proceeds to the payment of the debts. He produced much evidence tending to support him in his contention, while appellee produced much evidence tending to controvert the evidence of appellant. The parties appear to have lost sight of the law governing such matters. There was no plea that

the contract was obtained by fraud, or that it was entered into by mutual mistake of the parties, or the mistake of one and the fraud of the other. The evidence so taken, therefore, on that point is not helpful, as the question of what was meant by the parties when they entered into the contract must be determined from a consideration of the contract itself. It is admitted by appellant that he signed it. It seems to be conceded by the parties that the provision relating to a royalty was stricken out before the contract was signed. It is also admitted that the copy in the petition was made from the carbon copy retained by appellee.

Upon final submission the chancellor adjudged that appellant was the owner of the leasehold described in the contract, and adjudged that he had violated the terms of the contract, and that by reason of his having done so appellee had been damaged in the amount sued for, to wit, $2,750, and that he should recover that sum from appellant together with his cost. The judgment to this extent was a personal judgment against appellant. The attachment served on the Branchland Supply Company as garnishee was sustained as to the 312.76 shares of its capital stock, and appellee was given a lien on the stock with the direction that it be sold and the proceeds applied to the payment of appellee's judgment.

After judgment had been obtained by appellee, he gave notice to appellant and the United States Fidelity & Guaranty Company that he would move for a judgment on the bond for $800 growing out of the attachment of certain equipment located on one of the leaseholds of appellant. After one or more preliminary motions the court sustained the motion for a judgment on the bond, and appellee was awarded judgment for $800 in accordance with the terms of the bond. The whole matter is before us for review, and we must reach our conclusions from a consideration of the contract which is the basis of the action. The question before us is whether appellant bound himself to pay the debts mentioned in the contract at all hazards. If he did, and failed to make any effort to carry out the provisions of the contract, no fault can be found with the judgments which were entered by the lower court. On the other hand, if he did not bind himself to pay to appellee the sum of $2,750, at all hazards, the appellee must establish that the debts could have been paid as provided in the contract. The contract provides

that the lease has been sold subject to conditions and reservations. The reservations probably referred to the royalty which we have eliminated from consideration. There is one condition, however, that runs through the entire contract, and that is that the indebtedness mentioned therein must be paid from the first revenue derived from the production of oil from said lease. Another condition relating to the same matter is that the oil so produced must be divided into two equal parts. One part was to be used for development and operation expenses, and the other part was to be applied to the payment of the debts. There is a provision that the title to the leasehold shall not pass to the appellant until the payment of the indebtedness as well as developing and operating expenses. This must mean that the title to the property was not to completely pass until the debts were paid and until all expenses incident to the development and operation of the lease during the debt-paying period had been satisfied. We find a further provision to the effect that the payment of the indebtedness *in the manner provided* is the consideration for the lease. Again there is a provision that the leasehold is conveyed in consideration of the premises and payment of the debts *in the manner provided in the contract*. A consideration of the terms of the lease shows that there was a careful effort not to bind appellant to pay the indebtedness other than out of the proceeds of the oil which might be taken from the lease. It was not a promise to pay in the alternative; that is, that it might be paid in oil or in money at the option of either party. There is nothing in the contract from which it can be deduced that there was an alternative method or means of payment. That appellant did not perform the terms of the contract is well shown by the evidence, and in fact is admitted by him. But our conclusion is that this did not give appellee a right of action to recover the amount of debts which Fox had promised to pay out of the proceeds of the oil without his showing that the debts could have been so paid.

When a contract limits the payment of a debt to a particular fund to be realized in a particular way, and the raising of the fund, or a sufficiency of it, is a condition precedent to the payment of the debt, the agreement to pay cannot be enforced until the fund is realized, unless the failure to realize or collect the fund from which the payment is to be made is caused by the negligence or unreasonable failure to act of the promisor, or is otherwise

attributable to him. It must therefore in such a case be established by the evidence that the promisor failed in the performance of his part of the contract, or that he unreasonably refused to perform. If it should be established by the evidence that the promisor unreasonably failed to act, still there can be no recovery, unless it can be established that his failure is responsible for the lack of funds to discharge the debt. If he should have acted as required by the terms of the contract, and no funds would have been realized as the result of his efforts, with which to pay the debts, in whole or in part, then his failure to act was not the cause of the failure to raise the funds to pay the debts.

It follows that in this case the appellee should have alleged and proved that it was the failure of appellant Fox to act that caused the failure to realize the funds. To show this, he should have alleged and proved that, if Fox had acted within the terms of his contract, there would have been profits sufficient to pay the debts, or at least some part of them. As there was no allegation in the petition that profits would have been produced, if Fox had complied with the contract, the demurrer to the petition should have been sustained. What we have said is supported by the opinion in the case of Owens v. Curd, 192 Ky. 146, 232 S. W. 639.

Upon a return of the case, appellee will be allowed to amend his petition, and the parties will be permitted to take additional proof, if they so desire. If it is established that profits would have been realized by a compliance with the contract by Fox, appellant may recover the amount of the profits so shown, not to exceed the amount of the debt. If it is established that no profits would have been realized, even if Fox had complied with the contract, there can be no recovery on the contract; but this does not mean that there might not be a recovery for any damages to the property on the leasehold, if the damages were caused by the neglect or failure of Fox to comply with the contract.

The judgment against the United States Fidelity & Guaranty Company was at least premature, and must be reversed. As to whether the bond executed to discharge the attachment still remains in force, or whether the attachments still continue as valid and subsisting, we express no opinion. Nothing is decided, except the points herein discussed.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court, except Judge WILLIS sitting.