The THOS. J. DYER COMPANY, Plaintiff-Appellee,

v.

BISHOP INTERNATIONAL ENGINEERING COMPANY and General Insurance Company of America, Defendants-Appellants.

No. 14550.

United States Court of Appeals
Sixth Circuit.

May 30, 1962.

656

Taft, Stettinius & Hollister, Cincinnati, Ohio, for appellants, Leonard A. Weakley, Cincinnati, Ohio, of counsel.

Clark, Robinson & Hellebush, Cincinnati, Ohio, for appellee, Thomas H. Clark, Cincinnati, Ohio, of counsel.

Before MILLER, Chief Judge, SIMONS, Senior Judge, and CECIL, Circuit Judge.

SHACKELFORD MILLER, JR., Chief Judge.

Appellee, The Thos. J. Dyer Company, a subcontractor on the project hereinafter referred to, brought this action against the appellant, Bishop International Engineering Company, hereinafter referred to as Engineering Company, the general contractor, to recover the sum of $134,684.53 for materials and labor furnished by it in the construction of the project. The appellant, General Insurance Company of America, was also made a defendant as surety on the "Owner's Protective Bond," executed by the Engineering Company as principal.

The following facts were stipulated by the parties. Appellee is an Ohio corporation engaged in the plumbing contracting business. The Engineering Company is a partnership engaged in the general contracting business. On or about August 19, 1958, the Engineering Company entered into a written contract with The Kentucky Jockey Club, Inc., hereinafter referred to as the Jockey Club, by the terms of which it agreed to provide labor and materials required in connection with the construction of a portion of a Horse Racing Plant, known as Latonia Race Track, upon premises belonging to the Jockey Club, situated in Boone County, Kentucky. That portion of the construction project covered by the contract was described as "Phase One."

On or about April 27, 1959, the appellee entered into a written subcontract with the Engineering Company, by the provisions of which it agreed to provide materials for and to install certain plumbing and utilities required in connection with the completion of the construction work to be performed by the Engineering Company, pursuant to its contract with the Jockey Club, for which it was to receive the sum of $115,000.00. Paragraph 3 of this subcontract reads as follows:

"3. The total price to be paid to Subcontractor shall be ........ Dollars ($115,000.00) lawful money of the United States, no part of which shall be due until five (5) days after Owner shall have paid Contractor therefor, provided however, that not more than ........ per cent (90%) thereof shall be due until thirty-five (35) days after the entire work to be performed and completed under said contract shall have been completed to the satisfaction of Owners, and provided further that Contractor may retain sufficient moneys to fully pay and discharge any and all liens, stopnotices, attachments, garnishments and executions. Nothing herein is to be construed as preventing Con-

tractor from paying to the Subcontractor all or any part of said price at any time hereafter as an advance or otherwise."

The Engineering Company has provided all of the labor and material and has done all things necessary for the completion of the work required of it under the contract of August 19, 1958, and has received payment of the sum of $2,236,908.95, specified by the contract as the consideration to be paid to it for the work to be performed by it thereunder.

From time to time following the execution of the contract of August 19, 1958, the Engineering Company was called upon by the Jockey Club to provide labor, services and materials for the completion of various items of construction relating to the above mentioned Horse Racing Plant which had not been included within Phase One of the construction program of the Jockey Club. The Engineering Company has received compensation for certain portions of such additional labor, services and materials provided by it at the request of the Jockey Club but has not yet received payment for all of it.

From time to time after April 27, 1959, the date of the subcontract with appellee, appellee was called upon by the Engineering Company to provide labor, services and materials in addition to those specified in the above described subcontract, to which it agreed, as evidenced by change orders, letter proposals and acceptances. Some of such additional labor, services and materials fell within the scope of the above described construction contract between the Engineering Company and the Jockey Club, while some of it was beyond the scope of that contract.

The aggregate additional consideration which the Engineering Company agreed to pay appellee for the additional labor, services and materials to be provided pursuant to the change orders, letter proposals and acceptances, amounted to $112,652.17, making the total consideration payable to appellee for all services and materials which it agreed to perform and provide in connection with the construction of the Latonia Race Track equal the sum of $227,652.17.

Appellee has provided all the labor and materials and has done all things necessary for the completion of the work required of it under the subcontract, change orders, proposals and acceptances. Appellee completed its work as required on or before August 1, 1959, and the completed project was accepted by the owners on or about August 28, 1959.

The Engineering Company has not been paid by the Jockey Club for any work performed or material supplied by the appellee, other than that required pursuant to the terms of the original contract, dated August 19, 1958, between the Engineering Company and the Jockey Club.

The Engineering Company has paid to appellee for work performed and materials provided under the subcontract, changes orders, proposals and acceptances the sum of $119,133.06. After the payment of $119,133.06 there remained a balance due from the Engineering Company to the appellee of $108,519.11.

Under date of August 19, 1958, the appellant General Insurance Company of America executed a bond to the Jockey Club in the face amount of $2,086,908.-75, upon which the Engineering Company was the principal.

On December 4, 1959, the Jockey Club filed in the United States District Court for the Western District of Kentucky, Louisville Division, a proceeding for its reorganization under Chapter X of the Federal Bankruptcy Act. That proceeding is still pending.

The Engineering Company in its defense to the action contends that by the provisions of paragraph 3 of its subcontract with the appellee no payment was due thereunder to the appellee until five days after the Jockey Club, owner of the construction project to which the

contract related, had made payment to the Engineering Company; that the Jockey Club has paid to it on account of the work performed and the materials furnished by the appellee certain payments, all of which have been paid by the Engineering Company to the appellee; and that because it has not received any further payment from the Jockey Club, now being reorganized in bankruptcy, it has no obligation to make further payment to the appellee.

Following the filing of the stipulation of facts, the District Judge made findings of fact and conclusions of law, sustained appellee's motion for summary judgment, and entered judgment for the appellee in the principal amount of $108,519.11, together with $9,224.12 as interest due to the date of the judgment.

■ Appellant questions the right of the District Judge to make findings of fact in passing on a motion for summary judgment. Rules 52(a) and 56(c), Rules of Civil Procedure, 28 U.S.C.A. The facts were stipulated, and insofar as the findings of the District Judge may vary from them or from the admissions contained in the pleadings, they will be disregarded. The ruling on the motion for summary judgment will be reviewed on the basis of the stipulated facts and the admissions contained in the pleadings.

The parties devote considerable time to the question of whether paragraph 3 in appellee's subcontract is an enforceable provision of the contract, appellant contending that it is enforceable and appellee contending that it is not. We think this argument misconceives the real issue in the case. It appears to be settled law that contract provisions making certain obligations conditional or contingent upon the happening of a certain event are valid and enforceable. Fox v. Buckingham, 228 Ky. 176, 180–181, 14 S.W.2d 421; Gatliff Coal Co. v. Cox, 142 F.2d 876, 880–881, C.A.6th; Ward v. Flex-O-Tube Co., 194 F.2d 500, 503, C.A.6th. But the question remains whether the contract provision relied upon creates such a conditional or contingent obligation. This presents a question of construction or interpretation of the contract provision, not a question of its validity. Lewis v. Tipton, 10 Ohio St. 88.

In construing the contract sued on in this case, the first question is whether paragraph 3 of the subcontract of April 27, 1959, is applicable not only to the original subcontract but also to the several supplemental contracts between the parties for work additional to that covered by the original subcontract.

■ Appellee argues in support of the judgment that paragraph 3 in the subcontract of April 27, 1959, was applicable only to the labor and material covered by that instrument, and the subsequent agreements for additional work by it, which work was not contemplated in the original general contract, or in the initial subcontract, constitute separate contracts which do not contain the provisions of paragraph 3. It contends that the defense relied upon under paragraph 3 of the initial subcontract is not applicable to the work performed under the supplemental contracts. This contention appears to be in accord with the general rule. Canister Co. v. Wood & Selick, 73 F.2d 312, 314, C.A.3rd; 17 C.J.S. Contracts §§ 331–336. The subsequent letter proposals and acceptances do not expressly state that they are subject to the provisions of the initial subcontract and each one contains the elements necessary to constitute a separate, independent contract. However, the fundamental question is one of intention to be determined from the language of the parties, the subject matter of the agreement and in the light of all the surrounding circumstances. National-Ben Franklin Fire Ins. Co. v. Stuckey, 92 F.2d 411, 412, C.A.5th; First Seattle Dexter Horton National Bank v. Commissioner, 77 F.2d 45, 47–48, C.A.9th; B. R. C. Bottle Co. v. Peaslee-Gaulbert Co., 189 Ky. 28, 31, 224 S.W. 468.

■ We think it is clear that the two change orders of May 25, 1959, and June 9, 1959, are to be considered as part of the original subcontract, to which they

specifically refer. As their name indicates, they are changes in the original subcontract rather than new contracts. Following these two change orders, appellee wrote brief letters to the Engineering Company dated July 6, July 29, August 7, August 13, August 17, and two letters dated August 28. The letter of July 29 acknowledged instructions from the Engineering Company to work an extra two hours per day plus the regular eight-hour day, starting July 24, "Re: Latonia Race Track, Florence, Ky." It did not contract for any additional work and obviously must be considered as a part of the original subcontract. All of the other letters, except the letter of July 6, were confirmations of verbal instructions previously given by the Engineering Company to perform certain additional work on a time and material basis. Appellee performed this additional work without waiting for a written confirmation and the completed project was accepted by the owners on or about August 28, 1959. It was not until September 25 that the Engineering Company wrote a brief letter to appellee, merely stating, "This confirms authorization of the work described in your letters of" etc., the letters being referred to by date only. It will be noticed that no one of these letters referred to any date of payment or contained provisions which are usually a part of independent contracts in the construction industry. Two of the letters referred to the *repair* of some broken water lines and broken pipe, obviously work previously done. The work performed by the appellee was part of a continuous construction project with the successive letters merely expanding the scope of the work being performed by the appellee. This was in accordance with the intent of the parties as expressly provided by paragraph 14 of the subcontract, which read "Subcontractor shall, if so requested by Contractor, perform and complete any extra work or changes hereunder and no charges therefor shall be due or payable except upon agreement in writing made prior to the commencement of said extra work or changes." In our opinion these letters are to be considered as informal memoranda of additional work, under the original subcontract rather than as new, independent contracts between the contractor and subcontractor. Guerini Stone Co. v. P. J. Carlin Construction Co., 248 U.S. 334, 345, 39 S.Ct. 102, 63 L.Ed. 275. As such they are subject to the provisions of paragraph 3 of the original subcontract.

Accordingly, we come to the crucial issue in the case, namely, whether, as contended by the appellant, paragraph 3 of the subcontract is to be construed as a conditional promise to pay, enforceable only when and if the condition precedent has taken place, which in the present case has not occurred, or, as contended by the appellee, it is to be construed as an unconditional promise to pay with the time of payment being postponed until the happening of a certain event, or for a reasonable period of time if it develops that such event does not take place.

Numerous decisions from various courts are cited by the parties in support of their respective contentions. We think that these cases state the basic rule and are examples of its application under the facts of the particular case being considered. For example, in Kentucky, where the contract herein involved was to be performed, the Court of Appeals of Kentucky held in Fox v. Buckingham, supra, 228 Ky. 176, 180–181, 14 S.W.2d 421, that the promise to pay was a conditional one, enforceable only when the condition precedent has taken place. In Mock v. Trustees of First Baptist Church of Newport, 252 Ky. 243, 67 S.W.2d 9, 94 A.L.R. 716, the same Court had before it the case of an architect who had been employed to prepare plans and specifications for a Sunday school building, the construction of which was indefinitely suspended because of unexpected construction costs and the church's financial limitations. In a suit by the architect for the unpaid balance of his fee the Trustees of the church contended that he had agreed to

wait for the unpaid balance until such time as the church in its judgment and discretion was financially able and deemed it advisable to erect and complete the building. The Court held that such a promise to pay was not conditional upon the completion of the building, but should be construed to mean that payment was to be made within a reasonable time. In Ohio, where the contract herein involved was made, it appears that the Court of Appeals of Ohio has held in North Market Association, Inc. v. Case, 99 Ohio App. 187, 132 N.E.2d 122, that a promise to pay "if and when funds are available" was conditional and did not impose any obligation to pay until funds were available, which ruling was followed by the Court of Common Pleas of Highland County, Ohio, in Smith v. Shoemaker, 162 N.E. 2d 237. On the other hand, the Supreme Court of Ohio has held, in Lewis v. Tipton, supra, 10 Ohio St. 88, that a promise to pay "when I can make it convenient" created an obligation to pay after a reasonable period of time. The Court said that it was conceded that the intention of the parties to a contract can not prevail if directly contrary to the plain sense of the words employed, but when the intention is sufficiently apparent, effect should be given to that intent though some violence be thereby done to the words. It pointed out that if the Court accepted the construction claimed by the maker of the note, the maker might never find it convenient to pay which would lead to results certainly not contemplated by the parties. The Court of Appeals of Kentucky in making its ruling in Mock v. Trustees of First Baptist Church of Newport, supra, 252 Ky. 243, 67 S.W.2d 9, 94 A.L.R. 716, quoted with approval from section 2100 of Page on Contracts as follows:

> "The time of performance is sometimes made to depend upon the doing of some specified act other than that which the parties to the contract agree to do or it is made to depend upon the happening of some event which the parties to the contract do not covenant to cause to happen. The tendency of the courts is to hold that unless the contract shows clearly that such an action is an express condition, the provision with reference to such act is inserted in order to fix the time of performance, but not to make the doing of such act or the happening of such event a condition precedent. If this is the intention of the parties, the fact that such act is not performed or that such event does not happen, does not discharge the contract, and the act which the parties agree to do upon the performance of such act or upon the happening of such event, is to be performed in at least a reasonable time. This principle has been applied to a promise to pay when the maker has finished a church then building; or to pay when a certain dispute is settled; or 'as soon as the crop can be sold or the money raised from any other source.' "

As pointed out in that statement of the basic rule, it is the intention of the parties which is the controlling factor in each particular case.

■ It is, of course, basic in the construction business for the general contractor on a construction project of any magnitude to expect to be paid in full by the owner for the labor and material he puts into the project. He would not remain long in business unless such was his intention and such intention was accomplished. That is a fundamental concept of doing business with another. The solvency of the owner is a credit risk necessarily incurred by the general contractor, but various legal and contractual provisions, such as mechanics' liens and installment payments, are used to reduce this to a minimum. These evidence the intention of the parties that the contractor be paid even though the owner may ultimately become insolvent. This expectation and intention of being paid is even more pronounced in the case of a subcontractor whose contract is with the general contractor, not with the

owner. In addition to his mechanic's lien, he is primarily interested in the solvency of the general contractor with whom he has contracted. He looks to him for payment. Normally and legally, the insolvency of the owner will not defeat the claim of the subcontractor against the general contractor. Accordingly, in order to transfer this normal credit risk incurred by the general contractor from the general contractor to the subcontractor, the contract between the general contractor and subcontractor should contain an express condition clearly showing that to be the intention of the parties. Section 2100, Page on Contracts, supra.

In the case before us we see no reason why the usual credit risk of the owner's insolvency assumed by the general contractor should be transferred from the general contractor to the subcontractor. It seems clear to us under the facts of this case that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and materials put into the project. We believe that to be the normal construction of the relationship between the parties. If such was not the intention of the parties it could have been so expressed in unequivocal terms dealing with the possible insolvency of the owner. North American Graphite Corp. v. Allan, 87 U.S.App.D.C. 154, 184 F.2d 387, 390. Paragraph 3 of the subcontract does not refer to the possible insolvency of the owner. On the other hand, it deals with the amount, time and method of payment, which are essential provisions in every construction contract, without regard to possible insolvency. In our opinion, paragraph 3 of the subcontract is a reasonable provision designed to postpone payment for a reasonable period of time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor. Stewart v. Herron, 77 Ohio St. 130, 149, 82 N.E. 956. To construe it as requiring the subcon-

tractor to wait to be paid for an indefinite period of time until the general contractor has been paid by the owner, which may never occur, is to give to it an unreasonable construction which the parties did not intend at the time the subcontract was entered into. Nunez v. Dautel, 19 Wall. 560, 22 L.Ed. 161; Lewis v. Tipton, supra, 10 Ohio St. 88; Stewart v. Herron, supra, 77 Ohio St. 130, 148–149, 82 N.E. 956; Mock v. Trustees of First Baptist Church of Newport, supra, 252 Ky. 243, 67 S.W.2d 9, 94 A.L.R. 716; Banque Russo-Asiatique v. Dolch, 3 F.2d 266, C.A.9th.

The judgment is affirmed.