IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 20, 2018 Session

## VIC DAVIS CONSTRUCTION, INC. v. LAUREN ENGINEERS & CONSTRUCTORS, INC.

Appeal from the Chancery Court for Hawkins County
No. 2014-CH-99    Douglas T. Jenkins, Chancellor

———————————————————

No. E2017-00844-COA-R3-CV

———————————————————

A subcontractor brought suit against the general contractor for breach of contract and violations of the Prompt Pay Act. The subcontractor sought both damages, including punitive damages, and reformation of the subcontract based on fraud or mutual mistake. The general contractor counterclaimed for breach of contract. Upon the parties' agreement, the trial court reformed the subcontract based on mutual mistake. The trial court also granted the general contractor summary judgment on the subcontractor's claims for fraud and punitive damages. Then, following a bench trial, the court awarded a judgment to the subcontractor on its breach of contract claim and dismissed the general contractor's counterclaim. The court declined to award the subcontractor a statutory penalty or attorney's fees under the Prompt Pay Act. We affirm the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON II, JJ., joined.

Mark S. Dessauer, Kingsport, Tennessee, (on appeal) for the appellant, Vic Davis Construction, Inc.

Robert P. Noell and William F. Clayton, Knoxville, Tennessee, for the appellee, Lauren Engineers & Constructors, Inc.

# OPINION

## I.

### A.

BAE Systems Ordnance Systems, Inc. contracted with Lauren Engineers & Constructors, Inc. to build a new acetic acid refining facility at the Holston Army Ammunition Plant in Kingsport, Tennessee. Lauren, in turn, subcontracted with Vic Davis Construction, Inc. to supply, fabricate, and install underground piping, paving, and grading for the project.

### 1. Scope of Work

During the bidding process, the parties understood that the design work for underground piping was incomplete. Jerry Hobbs, Lauren's vice president, explained that, for at least a year, there was a constant flow of revised drawings and scope changes from BAE. After Vic Davis Construction submitted an initial bid, Lauren requested revised pricing based on January 2012 design drawings. Vic Davis Construction submitted a revised bid on February 13, 2012, and a final bid on April 20, 2012. Vic Davis Construction based its final bid on the underground piping shown in the January design drawings.

In early July, Brian Rogers, the contracts manager for Lauren, sent Vic Davis Construction a proposed subcontract. In the subcontract, Lauren agreed to pay Vic Davis Construction a lump sum of $2,105,582 to perform the work shown in drawings and specifications, which were attached as Exhibit C to the subcontract. Although Vic Davis Construction's project manager, Todd Johnson, reviewed the proposed subcontract, he did not review the attachments. He wrongly assumed that the subcontract included only the drawings and specifications that Vic Davis Construction had priced in the bidding process. In fact, the proposed subcontract included drawings from March and April 2012 that Vic Davis Construction had never seen or priced (the "March drawings"). Unbeknownst to Mr. Rogers, the March drawings significantly increased the quantity of the underground piping. On July 13, 2012, Vic Davis Construction executed the subcontract with the March drawings included as Exhibit C.

In the contract between Lauren and BAE, Lauren also based its budget for underground piping on the January 2012 drawings, the same drawings on which Vic Davis Construction had based its final bid. In October, using the price per linear feet of pipe from Vic Davis Construction's revised February bid, a Lauren cost analyst estimated that the revisions in the March drawings would cost an additional $577,061 to complete. Assuming that Vic Davis Construction's final bid included pricing for the March

2

drawings, the analyst suggested using price data from the final bid for a more accurate cost estimate.

Fred Gibson, Lauren's project budget manager, initially questioned whether Vic Davis Construction's final bid included the March drawings. In an e-mail to Lauren's onsite manager and others, Mr. Gibson wrote, "If [Vic Davis Construction] believe[s] they have captured the [March drawings in the subcontract price] then all the better," but he then followed up with the statement, "Keep in mind these drawings were issued in the March/April timeframe." After further review, Mr. Gibson concluded that the March drawings were included in the subcontract pricing, but other subsequent revisions were not. So he recommended asking Vic Davis Construction to price the subsequent revisions to obtain a more complete estimate.

Rather than asking Vic Davis Construction, Lauren instead chose to submit a change request to BAE based on its own estimate of the cost of the additional work. Ralph Elkins, Lauren's construction manager, directed Jeff Campbell, a project manager, to draft the change order without any discussion with Vic Davis Construction. On January 18, 2013, Lauren submitted a change order request to BAE for $399,909.82. BAE approved the change order the following May and paid Lauren in June. Vic Davis Construction was unaware of this change order.

Meanwhile, Adam Hendrickson, Vic Davis Construction's onsite project manager, noticed that the underground pipe quantities in Lauren's work schedule exceeded those upon which Vic Davis Construction based its bid. As it turned out, the extra pipe reflected in Lauren's work schedule was directly attributable to the March drawings. Mr. Hendrickson discussed the additional pipe with Dean Thomason, Lauren's onsite manager. Together they decided that the extra work could be addressed through a change order, which was required for any work outside the scope of the subcontract.

The parties' subcontract anticipated the potential for changes to the scope of work. But changes had to be memorialized in writing and approved by Lauren. Under the subcontract, Vic Davis Construction agreed not to "perform any work outside the Scope of Work without receipt of an executed change order or other form of written communication from [Lauren]." Vic Davis Construction further agreed that any work outside the scope of work would be uncompensated "unless written approval [wa]s obtained . . . prior to performance of the Work."

Despite recognizing the need for a change order and the language of the subcontract, Mr. Hendrickson, at Mr. Thomason's urging, agreed to delay in requesting a change order. Vic Davis Construction already had a number of unrelated change order

requests pending,[1] and Mr. Thomason thought it best to get the pending requests resolved first.

By March 2013, Vic Davis Construction had nearly completed the underground piping that it believed to be in its scope of work. Because Mr. Thomason was no longer with Lauren, Mr. Hendrickson notified Mr. Gibson by email that he would soon be submitting a change order request for the additional underground piping on the schedule.

Apparently, Mr. Hendrickson's email came as a surprise. Mr. Gibson responded, "THIS Sounds like we are missing a huge piece in the forecast!!" Internally, he also behaved as if the March drawings were an intended part of the subcontract. In an April email to Mr. Campbell, Mr. Gibson wrote: "[t]he bulk of the [additional quantities] that [Vic Davis Construction] believes are not included would be [included] if the [March] drawings were his contract basis" and added that "[o]nly minor changes have occurred since those March drawings." For his part, Mr. Campbell suggested that Lauren "remind [Vic Davis Construction] that their [sic] contract is based on the March drawings but anticipate a change request for the extra footages."

As a structural estimator working for Lauren presciently observed a few days later, "the key [wa]s whether Vic Davis' revised quote on 4-20-12 included the [March drawings.]" The revised quote did not. But the subcontract executed by Vic Davis Construction based on that quote did.

2. The Payment Dispute

On July 16, Mr. Hobbs sent Vic Davis Construction a punch list "for the remaining work in your Subcontract scope." The punch list included items reflected in the March drawings. Vic Davis, president of Vic Davis Construction, objected to work beyond what the company had priced in its final bid. In his view, the March drawings had been attached to the subcontract by mistake. But Mr. Hobbs did not relent, relying on the parties' agreement.

In late July, Mr. Hobbs rejected Vic Davis Construction's June pay application based on inaccurate progress reports. The perceived inaccuracies arose from the disagreement over the scope of the work. For the first time, Mr. Hobbs also objected to the way Vic Davis Construction had billed sales tax on the project. The subcontract required that sales tax be invoiced separately with supporting documentation and paid through a change order. Mr. Hobbs requested that Vic Davis Construction supply the missing documentation "to avoid delays to future Subcontract payments."

---

[1] At the beginning of the project, Vic Davis had performed several months of work outside of the subcontract at Lauren's request to address problems with the work site.

Two outstanding change order requests provided another source of friction for the parties. In one instance, Lauren's on-site manager requested over $154,000 in additional work related to a sewer connection, which Vic Davis Construction completed by early December 2012. Afterwards, a new on-site manager questioned the necessity for the work. And Vic Davis Construction spent months answering inquiries from Lauren about the work. Although Vic Davis Construction had submitted a change order request for the work on November 7, 2012, Lauren delayed sending the request to BAE for approval until July 26, 2013.

On August 1, 2013, both sides met to discuss the punch list and their other differences. On the sewer connection change order, Lauren explained that it was waiting on a response to the request from BAE. On the sales tax issue, Vic Davis Construction agreed to provide materials invoices for the purchase involved. Both sides also reviewed the punch list. For those items on the punch list attributable to the March drawings, they recognized that they had a potential "scope gap" issue. Lauren requested that Vic Davis Construction submit pricing for those items it deemed to be extra work.

Following the meeting, Mr. Davis believed that all controversies had been resolved. Mr. Hendrickson directed his crew to carry out the subcontract work that it could. By August 2, Vic Davis Construction had finished the work, which was mostly clean-up. The company still needed clearance to install the industrial storm drain. And the remaining grading and paving could only be performed at the end of the project.

As agreed at the meeting, Mr. Hendrickson also submitted change order requests and pricing for the work on the punch list that was not encompassed by Vic Davis Construction's April 2012 final bid. But Lauren stood on the parties' agreement. By letter dated August 6, 2013, Mr. Hobbs stated Lauren's position that the subcontract governed the scope of work and that "[f]urther negotiation of the Subcontract scope [wa]s inappropriate at this stage of the Project." Lauren requested that Vic Davis Construction only "submit requests for a change in the Subcontract where the Subcontract Documents for the Work ha[d] been changed since execution of the Agreement." And "Lauren expect[ed] Vic Davis [Construction] to timely supply all materials and install all Work required by the Subcontract and drawings listed in the Subcontract."

The following day, Mr. Davis responded with a letter of his own. He pointed out that the bid form provided by Lauren and used by Vic Davis Construction "identifie[d] the drawings that were to be used to bid each section of the project" and that the form "also list[ed] the linear footage and installation time for every section of underground piping." He noted that there were drawings listed in the subcontract that were not on the bid form and that the piping quantities shown in the subcontract exceeded those in the bid form. Because the subcontract price was set by the bid, Mr. Davis submitted that "the scope of our work should also be based on the drawings connected to the bid form." In conclusion, Vic Davis Construction would only "complete that work that [wa]s related to

5

the bid form and its governing drawings." The company considered "[a]ll other drawings . . . not part of the competitive bid process and . . . not part of our scope of work for the project."

On August 13, Lauren requested that Vic Davis Construction return to complete the storm drain installation, which both sides agreed was within the scope of work. Vic Davis Construction responded by inquiring about payment of its June pay application, which had previously been rejected, and the two change order requests that remained outstanding. The pay application and change order requests represented $337,001.21 in unpaid work by Vic Davis Construction.

Mr. Hobbs asked Vic Davis Construction to resubmit the June pay application "with the changes requested." And Lauren's construction manager, Mr. Elkins, erroneously informed Mr. Davis that BAE had not yet approved the sewer connection change order.[2]

On August 19, frustrated that Vic Davis Construction "ha[d] not received **any resolution** to the issues," Mr. Davis wrote to Lauren that his company "ha[d] no intention of returning to the jobsite until all the[] matters are resolved!" To keep the project moving, he invited Lauren "to hire the storm drain work that [wa]s in the critical path and deduct [the cost of the work] from [the parties'] contract." At the same time, he continued to press Lauren for payment for work that had "been installed for months." In early September, Mr. Davis sent a similar missive, advising Mr. Hobbs that Vic Davis Construction was "happy to return and complete our 'contracted' scope of work" when all outstanding invoices were paid.

On September 9, Lauren responded. Its letter advised that the sewer connection change order had been approved by BAE and that Lauren was in the process of amending the subcontract. But Lauren found Vic Davis Construction's documentation of its sales tax claim wanting and indicated that Lauren would be recouping some of the amounts already paid.

Lauren also persisted in the position that the scope of Vic Davis Construction's work included the March drawings. The letter stated that "[n]o further payment will be issued to Vic Davis Construction until the scope of the subcontract is complete."[3]

---

[2] BAE approved the sewer connection change order a few days before Mr. Elkins's communication, but Lauren had not yet been paid. Approval for the sewer relocation change order was still pending. In October 2013, Jeff Campbell resubmitted the sewer relocation change order, and BAE approved it shortly thereafter.

[3] Lauren also conditioned payment on the resolution of an issue between Vic Davis Construction and the United States Department of Labor. The Department disputed the classification of certain Vic Davis Construction workers as pipe layers rather than pipefitters for purposes of the Davis-Bacon Act.

Finally, because Vic Davis Construction had "abandon[ed] their [sic] contractual commitment to complete the work as detailed in the Scope of Work and Drawings as included in the Subcontract Agreement," Lauren gave notice of its intention to complete the subcontract work and to seek recovery of the costs of completion from Vic Davis Construction.

B.

On May 15, 2014, in the Chancery Court for Hawkins County, Tennessee, Vic Davis Construction sued Lauren. The complaint, among other things, contained claims for breach of contract, breach of the implied duty of good faith and fair dealing, and violations of the Prompt Pay Act of 1991. *See* Tenn. Code Ann. §§ 66-34-301, -602 (2015). Vic Davis Construction sought compensatory and punitive damages and reformation of the subcontract based on mutual mistake or fraud. Lauren filed an answer and a counterclaim for breach of contract.

Both sides moved for summary judgment on the reformation claim. The parties ultimately agreed that the March drawings were included in Exhibit C to the subcontract by mutual mistake. So the court reformed the subcontract to remove the March drawings from the scope of the work and dismissed Vic Davis Construction's claim of fraud in the formation of the subcontract.

After that, Vic Davis Construction amended its complaint. Although incorporating many of the allegations from the original complaint, the amended complaint included new claims. Vic Davis Construction added a claim for a statutory penalty under the Prompt Pay Act based on Lauren's alleged failure to deposit retainage in an interest-bearing escrow account. *See id.* § 66-34-104(c) (2015). It also added a claim for punitive damages for Lauren's alleged "intentional, fraudulent, reckless and/or malicious conduct."

Lauren moved for partial summary judgment on the claims added by the amended complaint, which the trial court granted in part. The court dismissed Vic Davis Construction's claims for fraud and punitive damages. But the court declined to grant summary judgment on the claim for the statutory penalty arising from the alleged retainage.

After a bench trial, the court ruled that Lauren committed the first material breach of the subcontract. The court granted Vic Davis Construction a judgment on its breach of

---

*See* 40 U.S.C. §§ 3141-3148 (Supp. 2017). Ultimately, the Department determined that the company owed $10,000 in back wages. After Vic Davis Construction paid the back wages, the matter was closed. But Lauren did not receive official confirmation from the Department until September 13.

7

contract claim in the amount of $352,105.19 plus prejudgment interest. The court declined to award Vic Davis Construction attorney's fees or a statutory penalty under the Prompt Pay Act. And the court dismissed Lauren's counterclaim for breach of contract.

## II.

Both Vic Davis Construction and Lauren raise issues on appeal. Of the five issues raised by Vic Davis Construction, two of the five relate to the court's grant of partial summary judgment to Lauren.

### A.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

In this case, the party moving for summary judgment did not bear the burden of proof at trial. Thus, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate," rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Id.*

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at

763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

1. Fraud

The trial court dismissed Vic Davis Construction's fraud claims because the proof at the summary judgment stage was insufficient to establish two essential elements of the claims, reliance and damages.[4] Fraud claims are inherently fact-intensive and often inappropriate for summary judgment. *See Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978). Even so, a plaintiff faced with a summary judgment motion must "produce some competent and material evidence legally sufficient to support his claim or defense." *Id.* A fraud claim is subject to dismissal "if the plaintiff, after being given a reasonable opportunity, has failed to establish an essential element of its case on which it will bear the burden of proof at trial." *Wells Fargo & Co. v. Paul Davidson Constr. Co.*, No. 02A01-9110-CV-00225, 1992 WL 108703, at *4 (Tenn. Ct. App. May 22, 1992).

Vic Davis Construction's claim for fraud is found in Count Four of its amended complaint. Lauren allegedly made affirmative, false representations and failed to disclose that which it had a duty to disclose. According to the amended complaint, Lauren falsely represented that the March drawings were included in the subcontract, and Lauren failed to disclose its pursuit of a change order from BAE for the March drawings. Thus, we must consider whether Vic Davis Construction's evidence was sufficient to establish the essential elements of fraud or fraudulent concealment.[5] Reasonable reliance

---

[4] We are not persuaded by Vic Davis Construction's argument that the trial court failed to "state the legal grounds upon which the court denie[d] or grant[ed] the motion." *See* Tenn. R. Civ. P. 56.04. The summary judgment order incorporated and attached the court's oral ruling. From the bench, the court announced that it was granting Lauren summary judgment on the fraud claims because Vic Davis Construction was unable to establish reliance or damages. *See In re Estate of Storey*, No. W2010-00819-COA-R3-CV, 2011 WL 2174901, at *14 (Tenn. Ct. App. May 31, 2011) (interpreting court's written order in light of its oral ruling which was incorporated by reference). The ruling also appears to be the product of the court's own independent judgment. *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316-17 (Tenn. 2014).

[5] Vic Davis Construction contends that Count Four includes four claims: fraud, intentional misrepresentation, fraudulent concealment, and constructive fraud. But intentional misrepresentation is not a stand-alone claim; it is an element of fraud. *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 547 (Tenn. Ct. App. 2012). And constructive fraud differs from actual fraud only in the element of intent. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 39 (Tenn. Ct. App. 2006). The motive of the actor is irrelevant for constructive fraud. *Id.* But reliance and damages remain essential elements for a constructive fraud claim. *Parks v. Alexander*, 608 S.W.2d 881. (Tenn. Ct. App. 1980) (noting that constructive frauds involve conduct "which reasonably can be expected to influence the conduct of others").

9

and damages are essential for both claims. *See Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538-39 (Tenn. 1998) (explaining the essential elements of a fraudulent concealment claim); *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012) (listing the essential elements of fraudulent misrepresentation).

Before Lauren filed its motion for partial summary judgment, the parties stipulated to several facts. The parties agreed that the March drawings were included in the subcontract by mutual mistake. Vic Davis Construction acknowledged that it was unaware of Lauren's pursuit of a change order for the March drawings until after it demobilized from the project. The parties stipulated that Lauren, not Vic Davis Construction, performed the work described in the March drawings and that Vic Davis Construction never intended to perform that work. Vic Davis Construction also agreed that its claim for actual damages was limited to payment for work it actually performed on the project and that it was not seeking an award of lost profits related to the work encompassed by the March drawings.

In addition to the parties' stipulations, Lauren supported its motion for partial summary judgment with the deposition testimony of Mr. Davis. Mr. Davis testified that his decision to demobilize was not based on the dispute over the scope of work. Rather, he decided to demobilize because Vic Davis Construction was not being paid for completed work.

The gist of the fraud claim was that Lauren attempted to mislead Vic Davis Construction into performing extra work, represented by the March drawings, without compensation. The problem with that theory was that Vic Davis Construction was never misled. It refused to do work outside the scope of its bid, despite the language of the subcontract. So even if Lauren intentionally misrepresented the scope of the work, Vic Davis Construction did not rely on the misrepresentation.

Vic Davis Construction's fraudulent concealment claim fails for much of the same reason. Vic Davis Construction complains that Lauren failed to disclose that it had obtained a change order from BAE to do the work represented by the March drawings. But Vic Davis Construction could not prove that it would have acted differently had it known about the change order. Vic Davis Construction stipulated that it never intended to do the extra work.

To prevail on a claim for fraud or fraudulent concealment, the plaintiff also must have suffered damages from the deception. *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship*, 387 S.W.3d at 548. Vic Davis Construction was not seeking to recover lost profits; its fraud damages were limited to payment for completed work. Vic Davis Construction did not perform any of the work in the March drawings. Because Vic Davis

Construction could not establish any damages arising from Lauren's alleged deception, the fraud and fraudulent concealment claims failed as a matter of law.

Here, Lauren affirmatively demonstrated that Vic Davis Construction's evidence at the summary judgment stage was insufficient to establish reliance or damages, so the trial court did not err in dismissing the fraud claims on summary judgment. *See Rye*, 477 S.W.3d at 264. Vic Davis Construction was obligated to come forward with specific facts showing that there was a genuine issue for trial. *See id.* at 265. But it failed to do so.

2. Punitive Damages

On appeal, Vic Davis Construction also contends that the trial court erred in dismissing its punitive damages claim when it dismissed the fraud claims. Punitive damages may be awarded for breach of contract but only in the most egregious cases. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 211 n.14 (Tenn. 2012). The egregious cases are those with clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly in breaching the contract. *Id.*; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 355 (AM. LAW INST. 1981) ("Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.").

Vic Davis Construction argued that Lauren's conduct was egregious in several respects. Primarily it points to Lauren's insistence on enforcing the subcontract as written despite knowing a mistake had been made. Vic Davis Construction also claims that Lauren acted egregiously by failing to disclose its own pursuit of a change order for the work in the March drawings and by refusing to approve a change order to allow Vic Davis Construction to be compensated for performing the work in the March drawings.

We agree with the trial court's conclusion that punitive damages were not warranted. During the course of this litigation, both parties agreed that the March drawings were included in the subcontract by mutual mistake. In other words, both parties were mistaken about the contents or effect of the subcontract. *See Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006) ("A mistake in expression occurs where one or both parties to a written contract erroneously believe that the contract embodies the agreement that both parties intended it to express."); RESTATEMENT (SECOND) OF CONTRACTS § 155 (AM. LAW INST. 1981) ("Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected."). So any actions taken by Lauren in furtherance of its mistaken belief lacked the requisite culpability to be characterized as "intentional, fraudulent,

11

malicious, or reckless." *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) (defining intentional, fraudulent, malicious, and reckless conduct).

Vic Davis Construction presented no evidence that Lauren was aware of the mistake prior to demobilizing from the project. Both externally and internally, Lauren proceeded as though the parties' subcontract, which included the March drawings, governed the scope of work. And it does not necessarily follow that a change order would be required for the subcontract just because Lauren required a change order for its contract with the owner due to the March drawings. After all, the subcontract, which Vic Davis Construction signed, already included the March drawings. In sum, the evidence presented failed to rise to the level of establishing egregious conduct on the part of Lauren.

B.

Lauren contends that the evidence preponderates against the court's finding that it committed the first material breach under the subcontract. In non-jury cases, our standard of review is de novo upon the record of the proceedings below, but the trial court's findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn. R. App. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review a trial court's conclusions of law de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013); *Rigsby v. Edmonds*, 395 S.W.3d 728, 734 (Tenn. Ct. App. 2012).

Here, neither party fully performed under the subcontract. So the court had to determine which party was responsible for the first uncured material breach. *See McClain v. Kimbrough Constr. Co.*, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990). A party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract. *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 715 S.W.2d 41, 47 (Tenn. 1986). Failure to pay a progress payment on a construction contract is a material breach that entitles the subcontractor to stop work and sue for breach. *Rhea v. Marko Constr. Co.*, 652 S.W.2d 332, 333 (Tenn. 1983). But Lauren submits that it did not owe Vic Davis Construction any compensation when it demobilized from the project.

On August 19, 2013, Mr. Davis notified Mr. Hobbs that Vic Davis Construction would not return to work until the payment dispute was resolved. We assume that Vic Davis Construction demobilized shortly after the letter. According to Vic Davis Construction, Lauren owed it $337,000 for completed work as of that date.

12

The subcontract included a number of conditions to payment of the subcontractor. Among those conditions was a "pay-if-paid" clause.[6] Specifically, the subcontract provided as follows:

> After review and approval of Subcontractor's invoice by Contractor, Subcontractor shall be entitled to receive payment of the approved portion of its requisition within three (3) business days following Contractor's (bank cleared) receipt of payment for the Subcontractor's work from the Owner. It is expressly acknowledged that receipt of payment by the Contractor from the Owner on account of the work performed by the Subcontractor shall be a condition precedent to any obligation by the Contractor to make any payment to the Subcontractor. . . . Further, any amount disputed by Contractor, or by Owner which is attributable to Subcontractor's work, will be withheld until the dispute is resolved, and the disputed balance will be paid immediately upon resolution of the dispute. Contractor and Subcontractor agree to discuss in good faith and attempt settlement of any disputed amount as rapidly as possible.

On August 19, BAE had not yet paid Lauren for the two outstanding change order requests. Because receipt of payment from BAE was a condition precedent to any obligation by Lauren to pay, we agree that Vic Davis Construction was not entitled to payment for the change order work when it demobilized.

But the June pay application was also unpaid when Vic Davis Construction demobilized. Lauren contends that the failure to pay the June pay application was not a breach because any amount Lauren owed for the June pay application was more than offset by the amounts Vic Davis Construction owed Lauren for sales tax and change order number ten. Article 22 of the subcontract provided that "Contractor shall have the right . . . to deduct from any amounts due Subcontractor an equitable amount in discharge" of any claims Contractor may have against Subcontractor.

Change order number ten reduced Vic Davis Construction's compensation by $22,835, the amount Lauren mistakenly paid Vic Davis Construction for work performed by another subcontractor. The parties did not dispute the amount should be deducted, but after the deduction, Lauren still owed Vic Davis Construction $90,000 for the June pay application.

The trial court rejected Lauren's argument that it had a claim against Vic Davis Construction for undocumented sales tax. As the court recognized, while the State of

---

[6] These clauses can serve to transfer the credit risk associated with the solvency of the owner from the general contractor to the subcontractor. *Thos. J. Dyer Co. v. Bishop Int'l Eng'g Co.*, 303 F.2d 655, 661 (6th Cir. 1962).

Tennessee may have a claim against Vic Davis Construction for unpaid sales tax, Lauren did not. Lauren agreed to pay sales tax on permanent materials. Lauren's only "claim" against Vic Davis Construction was for documentation. At trial, Mr. Hobbs acknowledged that Vic Davis Construction remained responsible for paying the sales tax to the State of Tennessee. Lauren had no intention of paying any sales tax to the State of Tennessee; rather it intended to keep any funds recouped from Vic Davis Construction for unpaid taxes as profit.

Lauren's failure to pay the June pay application was a material breach that gave Vic Davis Construction the right to cease performance and sue for damages. *See McClain*, 806 S.W.2d at 199. So the trial court did not err in awarding Vic Davis Construction a judgment against Lauren for breach of contract or in dismissing Lauren's counterclaim for breach of contract.

C.

The remaining issues raised by the parties relate to the Prompt Pay Act. Vic Davis Construction argues that the evidence preponderates against the trial court's finding that Lauren did not retain a percentage of the subcontract price. As a result, Vic Davis Construction asserts that the court erred in not considering statutory penalties under the Act. Both parties argue that they are entitled to attorney's fees under the Act based on the other parties' bad faith.

1. Retainage Claim

Under the Prompt Pay Act, "[w]henever, in any [construction] contract . . . , a certain . . . percentage of the contract price is retained, that retained amount shall be deposited in a separate, interest-bearing, escrow account with a third party which must be established upon the withholding of any retainage." Tenn. Code Ann. § 66-34-104(a). Compliance is mandatory and cannot be waived by contract. *See id.* § 66-34-104(j). If a contractor fails to deposit retainage as required, the contractor must pay the subcontractor "an additional three hundred dollar ($300) penalty per day for each and every day that such retained funds are not deposited . . . ." *Id.* § 66-34-104(c).

The trial court ruled that Vic Davis Construction was not entitled to recover the statutory penalty because the subcontract did not provide for retainage. The subcontract plainly provided that "[i]nvoices are not subject to retention." No other subcontract provisions indicate that Lauren was authorized to withhold a percentage of the contract value as retainage. And Lauren paid Vic Davis Construction's first twelve pay applications in full; nothing was retained.

Nevertheless, Vic Davis Construction contends that Lauren withheld a percentage of payment, which was reflected in the subcontract as a line item designated as "Turn-

14

over, As-Builts, Final Clean Up, Demobilize." Vic Davis Construction points out that the amount of this line item, $108,835, equals five percent of the total contract price before credits, and according to the company, "[t]he $108,835.00 was not representative of the cost of 'Turn-over, As-Builts, Final Clean Up, Demobilize' for [Vic Davis Construction]'s scope of work on the Project . . . ."[7] In reality, the company claims that such work would cost less than $20,000. Vic Davis Construction's project manager, Mr. Johnson, testified that Lauren referred to these amounts as "holdback" in pre-contract negotiations and that the amount proposed was initially ten percent of the total contract price. Mr. Johnson explained that the amount was reduced only after he told his counterpart at Lauren that, under Tennessee law, retainage could not exceed five percent of the amount of the contract. *See id.* § 66-34-103(a) (2015).

Here, the trial court properly concluded that the escrow provision of the Prompt Pay Act did not apply. The parties expressly agreed that invoices were not subject to retention. Although Mr. Johnson testified that the amount attributed to "Turn-over, As-Builts, Final Clean Up, Demobilize" was excessive, he acknowledged that he "did not pay any attention to th[e] verbiage" in the final version of the subcontract, leaving the amount shown for those services, as well as the other line items, unchallenged. It is not our role to "make a new contract for parties who have spoken for themselves." *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 597 (Tenn. Ct. App. 1999). We also do not rewrite contracts to include protections that are not there.

The parties' pre-contract discussions regarding establishing a holdback do not alter the outcome. The subcontract contained an integration clause.[8] Thus, "the parol evidence rule prohibit[ed] the use of evidence of pre-contract negotiations in order to vary, contradict, or supplement the contractual terms of [the] fully integrated agreement." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, ___ S.W.3d ___, No. M2015-02524-SC-R11-CV, 2019 WL 256716, at *18 (Tenn. Jan. 18, 2019).

---

[7] In the construction context, retainage serves "to assure that a contractor or subcontractor will satisfy its obligations and complete a project." *A-C Constr., Inc. v. Bakke Corp.*, 956 P.2d 219, 226 (Or. Ct. App. 1998); *PSE Consulting, Inc. v. Frank Mercede and Sons, Inc.*, 838 A.2d 135, 141 n.3 (Conn. 2004) ("[T]he term 'retainage' ordinarily refers to the percentage of the contract price that a project owner may withhold from a contractor pending completion and acceptance of the contractor's performance under the terms of a construction contract."). By assigning some value to "Turn-over, As-Builts, Final Clean Up, Demobilize," Vic Davis Construction seems to acknowledge that the entire amount of this line item does not constitute retainage.

[8] The subcontract provided, in pertinent part, as follows: "This Subcontract . . . contains the entire agreement of the parties, and supersedes all negotiations, proposals, . . . , agreements and understandings, if any, written or oral, heretofore had between the parties relating to the Work."

15

2. Bad Faith Claim

Vic Davis Construction also challenges the court's refusal to award attorney's fees. The prevailing party in an action under the Prompt Pay Act may recover reasonable attorney's fees if the nonprevailing party acted in bad faith. Tenn. Code Ann. § 66-34-602(b). We review the court's refusal to award attorney's fees under an abuse of discretion standard. *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 827 (Tenn. Ct. App. 2009). An abuse of discretion occurs when a court "causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Attorney's fees should not be awarded on this basis absent a finding of bad faith. Tenn. Code Ann. § 66-34-602(b) ("Reasonable attorney's fees may be awarded against the nonprevailing party; provided, that such nonprevailing party has acted in bad faith."). Bad faith is a factual determination, which often hinges on witness credibility. *Madden Phillips Constr., Inc.*, 315 S.W.3d at 828-29. We will not disturb a trial court's factual finding based on witness credibility in the absence of clear and convincing evidence to the contrary. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

Vic Davis Construction's bad faith claim is primarily concerned with whether Lauren honestly believed it was entitled to insist on performance of the subcontract as written when it knew a mistake had occurred. Bad faith is not defined in the Prompt Pay Act. But our courts have reasoned that bad faith involves a knowing or reckless disregard of contractual rights or duties. *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 181 (Tenn. Ct. App. 2001). By contrast, good faith "imposes an honest intention to abstain from taking any unconscientious advantage of another, even through the forms and technicalities of the law." *Id.* Thus, an honest belief by one party that it did not owe the money claimed by the other, even if later proved wrong, would not constitute bad faith. *See id.* ("In reviewing this record, we have no doubt that McKinnon's principals honestly believed that their company did not owe the money claimed by Trinity.").

After hearing the witnesses and evaluating the evidence, the trial court determined that neither party had acted in bad faith.[9] The court found that mistakes were made on both sides regarding the scope of work in the subcontract. The steady flow of revised drawings at the beginning of the project and lack of attention to detail on both sides caused the mistake. Once the subcontract was executed and work began, Lauren

_____

[9] Lauren also requested that the trial court award attorney's fees under this provision. Because Lauren did not prevail at trial, it was not entitled to an award of attorney's fees. *See* Tenn. Code Ann. § 66-34-602(b). So we decline to address Lauren's argument that the evidence preponderates against the court's finding that Vic Davis Construction did not act in bad faith.

16

understandably proceeded on the assumption that Vic Davis Construction's final bid included the work in the March drawings. And even though that assumption proved to be mistaken, by its terms, the subcontract, including the attached drawings and specifications, superseded Vic Davis Construction's bid. On these facts, the court did not find that Lauren intended to take unconscientious advantage of Vic Davis Construction or that Lauren knowingly or recklessly disregarded contractual rights or duties. The evidence does not preponderate against the trial court's findings.

We affirm the trial court's refusal to award attorney's fees under the Prompt Pay Act. Based on our affirmance, we decline to award Vic Davis Construction its requested attorney's fees on appeal under this same statutory provision. *See Beacon4, LLC v. I & L Investments, LLC*, 514 S.W.3d 153, 212 (Tenn. Ct. App. 2016) (holding that the Prompt Pay Act "also provides for an award of reasonable attorney's fees on appeal, provided that the appellant has requested such fees in appellate pleadings").

## III.

We affirm the trial court's grant of summary judgment to Lauren on Vic Davis Construction's fraud and punitive damages claims. At the summary judgment stage, Vic Davis Construction was unable to establish reliance or damages from deception. Vic Davis Construction was also unable to establish clear and convincing evidence that Lauren's breach of contract was sufficiently culpable for an award of punitive damages.

We also conclude that the evidence does not preponderate against the trial court's finding that Lauren committed the first material breach. Lauren's failure to pay the June pay application was a material breach that justified Vic Davis Construction's subsequent demobilization from the project.

Finally, we affirm the trial court's decisions under the Prompt Pay Act. The trial court did not err in refusing to award Vic Davis Construction the statutory penalty for failure to deposit retainage in an interest-bearing escrow account. The subcontract does not provide for retainage. And the trial court did not abuse its discretion in refusing to award attorney's fees for bad faith.

_____
W. NEAL MCBRAYER, JUDGE

17